**AIR COOLING & ENERGY,**
**INC., Appellant,**

v.

**MIDWESTERN CONSTRUCTION CO.**
**OF MISSOURI, INC., and Jackson**
**County, Missouri, Respondents.**

**No. WD 30812.**

Missouri Court of Appeals,
Western District.

Aug. 4, 1980.

Charles C. Shafer, Jr., Kansas City, for appellant.

Myron S. Silverman of Gage & Tucker, Kansas City, for respondent Midwestern Const. Co. of Missouri, Inc.

Stephen F. Volek, Associate County Counselor, Kansas City, for respondent Jackson County, Missouri.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is an original proceeding by subcontractor for declaratory judgment interpreting liability of parties relative to an excavating contract. The parties stipulated either could move for summary judgment. Appellant, by motion to Rule 74.04, sought summary judgment. Respondents also sought summary judgment and trial court entered judgment for both respondents. This appeal followed. The judgment is affirmed.

Appellant charges the trial court erred in (1) its finding that appellant was not entitled to recovery on either theory of breach of contract, breach of warranty or quantum meruit, (2) its finding that removal of the rock was not extra work or an unforeseen physical condition outside the agreement of the parties, and (3) its finding that appellant was obligated to make an independent interpretation of subsurface conditions or that such finding should have established the existence of an ambiguous contractual situation which should have been resolved against respondents.

Review of this matter is limited by Rule 73.01 as interpreted by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). Review is of an equitable nature upon both the evidence and the law, see *Tockman v. Shower Doors, Inc.*, 568 S.W.2d 74 (Mo.App. 1978). The judgment should be affirmed regardless of the theory upon which it is based insofar as upon the law and evidence, such judgment could have been properly reached on any reasonable theory, see *Snadon v. Gayer*, 566 S.W.2d 483 (Mo.App. 1978).

The instant case was tried to the court upon the pleadings, a stipulation of facts and documents pertaining to the contract in dispute. The record does not reveal a request by any of the parties for findings of fact and conclusions of law and such is not required of the trial court if not requested, see *Skinner v. Henderson*, 556 S.W.2d 730 (Mo.App.1977). When findings and conclusions are not requested, all fact issues are to be considered found in accordance with the result reached by the trial court, see *Marriage of Badalamenti*, 566 S.W.2d 229 (Mo.App.1978).

The trial court herein, in its judgment, entered what it termed its conclusions in support of the judgment.

The evidence reveals Jackson County (hereinafter referred to as County) desired to have constructed for public use, a beach area and bath house in Fleming Park, which contains Lake Jacomo. The county, by its governing body, solicited formal public bids for the work. Respondent, Midwestern Construction Co. of Missouri, Inc. (hereafter referred to as Midwestern) secured the low bid as general contractor. Midwestern, in turn, contracted with appellant for appellant's removal of subsurface soil and material for the purpose of installing various "pipes, lines and underground mains". Appellant, as the excavating subcontractor, was to excavate a "force main trench" and a "water line trench" running approximately parallel to each other. Specifications were prepared by the consulting engineers, George Butler and Associates (hereafter referred to as Engineer). In conjunction with the preparation of specifications, Engineer contracted with Layne-Western Co. to have soil borings made for design purposes. These borings were made and logs thereof were prepared. The logs indicated at boring no. 4, "Refusal was encountered at 1.1 feet."

Appellant relied upon the boring logs by its own choice. As the work proceeded, appellant struck rock for a distance of some 150–200 feet along the trench areas. Appellant sought a change order, requesting reimbursement for the cost of rock removal claimed to be encountered between borings no. 4 and no. 7. The change order and extra payment were refused upon recommendation by the Engineer.

Appellant seeks recovery of $9,558.18 for labor and materials claimed as *extra and unforeseen work*. Respondents declined payment, contending the agreement between the parties excluded any liabilities for such costs as they were not *extra and unforeseen* as claimed. The dispute centers upon the agreement between the parties and the interpretation to be given thereto.

The trial court within its judgment concluded:

"1. Under its contract, the plaintiff was required to excavate all materials of whatever nature and whatever substances encountered within the limits of the project including rock.

2. Test boring results were specifically excluded from the contract, and the work performed by plaintiff in excavation of 150 to 200 feet of rock was not 'extra work' under the contract. The rock encountered by the excavation was not an 'unforeseen physical condition' as contemplated under the contract.

3. The plaintiff had no right to rely on the borings obtained for design purposes and was obligated to make an independent interpretation of subsurface conditions.

4. Plaintiff is not entitled to any further or additional compensation from either defendant.

5. Plaintiff is not entitled to recover on the basis of quantum merit [sic], breach of warranty or breach of contract."

Appellant's first and second points of alleged error are taken up together, as they interrelate to the same evidence, and there is no evidence on the record to support the allegation of breach of contract. This leaves the question: Is appellant, in the alternative, entitled to recover upon a theory of warranty or upon the theory of quantum meruit? In considering this question, it is necessary to simultaneously address point (2) raised by appellant.

■ The matter of warranty will be first discussed. The stipulation of facts reveal appellant relied upon the test boring logs. The evidence, by stipulation, further reveals that the contract between respondent Midwestern (as general contractor) and appellant (as subcontractor) was subject to the original contract between Midwestern and the County. That contract provided the following pertinent provisions:

"a. (General Conditions Section 6.11) 'Contractor agrees to bind specifically every subcontractor to the applicable terms and conditions of the contract documents for the benefit of owner.' * * *

c. (Specifications, General Requirements, paragraph 1–4, entitled sub-surface investigation)

'A. Subsurface data has been obtained for design purposes.

B. Copies of such data will be made available on request from the engineer, George E. Butler & Associates, Inc.

C. Neither the owner nor the engineer will be responsible for the completeness of accuracy of data so furnished.

D. The *bidder* shall make his own interpretations of this available information and shall be expected to obtain additional data at its *own expense*, if required to satisfy *himself* as to the conditions to be encountered.' "

At this point it is evident from the contract that all subcontractors were bound to it. It also follows that such agreement puts the subcontractor on notice that the county and its engineers did not warrant the accuracy of subsurface data. In addition to the foregoing contractual terms, there were specifications of the project. Subsequent to declaring the type of work to be performed, the following declaration is to be found:

"a. Subsurface data has been obtained for *design purposes.*

b. The location of each exploration and information obtained are indicated in separate documents that will not be made a part of this contract.

c. Copies of such data will be made available, on written request from the engineers, George E. Butler & Associates.

d. *Bidder* shall make his own interpretation of this available information and shall be expected to obtain additional data at his own expense, if required, to satisfy himself as to the conditions to be encountered."

The foregoing speaks for itself. In addition to putting the subcontractor on notice as to expectation of his determination of accuracy of subsurface conditions, the fact is clear that any information (in this case the boring logs) regarding subsurface conditions were not part of the agreement or contract. It is evident from the foregoing that the county, engineers, or Midwestern did not warrant the accuracy of the test borings. There is nothing to be found in the evidence to show any party held out to appellant that the borings were accurate and could be relied upon. A further point which completely dispels appellant's warranty theory revolves around the following stipulations:

"26. A copy of Plan Sheet # 12, a Contract Document, entitled 'Boring Location' is attached hereto, as Exhibit # H.
* * * .

29. No officer, employee/agent or representative of the county has promised any additional payment to plaintiff or co-defendant for removal of rock."

The evidence upon this record and appellant's presentment on appeal at no time allege or prove that any of the respondents assisted appellant in its subcontracting bid. Simply, the general contract was let to Midwestern. Appellant relied upon the test borings. Appellant struck rock for a considerable distance and encountered expenses not contemplated or calculated in its subcontract bid. Such evidence is not tantamount to a warranty by the county or Midwestern, and there is no merit in appellant's contention of warranty.

As to the theory of quantum meruit, appellant must show, under the evidence of this particular case, that removal of the rock was *extra and unforeseen work.* Appellant had bid the excavation work, agreeing to:

"a. General: All excavation as hereinafter specified shall be unclassified and shall compromise the satisfactory removal and disposition of all the material. Excavation of every description and of whatever substances encountered within the limits of this project shall be performed to the lines and grades indicated on the drawings.

g. (Specifications, Division 2, in paragraph 13 entitled 'Excavation for Piping')

'a. General: The Contractor shall perform all excavation of every description and of whatever substances encountered to the depths indicated on the drawings or as otherwise specified. * * *

e. Trench Bottom in Rock Excavation: Where rock is encountered in excavating and where it is necessary to place pipe in rock excavation [sic], the rock shall be removed to provide a minimum clearance of 6″ below and 4″ at the side of the pipe.' "

Appellant, in essence, argues that since its employees could not "see" the subsurface rock and in fact struck the rock along the trenchway, such was *unforeseen* and thus created *extra work* not within the contract. Appellant principally relies upon the case of *Massman Construction Company v. Kansas City, Missouri*, 487 S.W.2d 470 (Mo.1972), a case wherein the contractor recovered for extra work relative to a roadway and viaduct project. That case is distinguishable and hence not controlling. In that case, the issue was that of the extent of deterioration of concrete. It was known and contemplated between the parties that the extent of deterioration could not be ascertained until a step-by-step process was followed. While Massman was required to submit a lump-sum bid, the contract also provided that concrete removal was to be "in accordance with plans and specifications", and there was repeated contractual reference to removal of concrete "to the extent shown on the plans." The evidence in that case also revealed a specific change order provision in the contract related to the removal of concrete.

In the instant case, appellant agreed and was bound to remove the soil and other materials along the trench area. Appellant was advised that the parties did not warrant the accuracy of the boring data. Appellant was further advised to secure additional data. Appellant elected to rely upon the boring logs. This reliance was a voluntary choice made by appellant and was part of its bid process. The removal of the rock was a part of what appellant agreed to do in completing the excavating contract. The fact that the cost encountered by appellant in removing the rock was not contained or contemplated within appellant's bid does not, by itself, render such cost the result of *extra and unforeseen work*.

" 'Extra work', as used in connection with a building and construction contract, means work of a character not contemplated by the parties and not controlled by the contract. It may be performed by the contractor for the owner or by the subcontractor for the general contractor. It is distinguished from 'additional work', which is that class of work that may be fairly presumed to arise in the course of the proper construction of an improvement, although not included in the plans and specifications or specifically mentioned or referred to in the contract." 17A C.J.S. Contracts § 371(6) (1963). See also *Haughton Elevator Company v. C. Rallo Contracting Company*, 395 S.W.2d 238 (Mo.App.1965), where the court declared extra work to mean work not contemplated by the parties and not controlled by the contract. See also *Kaiser v. Lyon Metal Products, Inc.*, 461 S.W.2d 893 (Mo.App.1970), relying on definition set forth in *Haughton Elevator Company v. C. Rallo Contracting Company, supra.* For additional text, but comparable definition, see 13 Am.Jur.2d Building, Etc. Contracts § 19 (1964) and 17 Am.Jur.2d Contracts §§ 353, 354 (1964).

In the instant case, appellant bid the subcontract on excavation. Appellant was advised that none of the parties had attested to the accuracy of the test borings and was advised to satisfy itself regarding the subsurface conditions. Appellant elected to rely upon the test borings in formulation of its bid. By its bid, appellant agreed to remove all material, including rock, along the trench area. Under the instant facts, it cannot be concluded that the removal of the rock was *extra and unforeseen work* not within the contemplation of the parties. It is unfortunate that the cost of rock removal was not calculated within appellant's original bid, but it could have taken necessary precautions to have included such cost. On the other hand, appellant elected to rely upon the test borings. The data and documents regarding the borings and specifications were specifically excluded from the contract between the parties. The net result is that appellant agreed to dig and clear the trench for a specific price. Re-

spondents, as parties to the agreement, accepted appellant's bid and had the right to rely upon appellant's performance for the stated bid price.

The mere fact that appellant encountered costs not covered by its bid in removing the rock does not constitute the fact that this removal was *extra and unforeseen work.* The evidence shows the trial court was correct in concluding that the removal of the rock was not *extra and unforeseen work* or a physical condition outside the agreement between the parties. Hence, the trial court's conclusion that appellant could not recover under the theory of quantum meruit was correct. The evidence further shows there existed no breach of contract or any warranty by respondents as to subsurface conditions, and the ruling by the trial court on these points was correct.

For the foregoing reasons, points (1) and (2) are ruled against appellant.

■ There remains for disposition appellant's final contention of contractual ambiguity and its contention that the trial court erred in holding it was obligated to make an independent interpretation of subsurface conditions. In essence, appellant argues that since respondents drew the contract and an alleged ambiguity exists, such contract should be construed against respondents. Appellant relies upon the wording of Section 4.3 of the contract, which reads as follows:

"4.3 CONTRACTOR shall promptly notify OWNER and ENGINEER in writing of *any subsurface or latent physical conditions at the site differing materially from those indicated in the Contract Documents.* ENGINEER will promptly investigate those conditions and advise OWNER in writing if further surveys or subsurface tests are necessary. Promptly, thereafter, OWNER shall obtain the necessary additional surveys and tests and furnish copies to ENGINEER and CONTRACTOR. If ENGINEER finds that the results of such surveys or tests indicate that there are subsurface or latent physical conditions which differ materially from those intended in the Con-

tract Documents, and which could not reasonably have been anticipated by CONTRACTOR, a Change Order shall be issued incorporating the necessary revisions."

The key words in the foregoing section are emphasized. In essence, appellant was entitled to a change order if conditions differed materially from those represented in other contractual documents.

The evidence reveals the engineer made an on-site inspection when a change order was requested and advised county there was no unforeseen conditions. Be that as it may, appellant must show a conflict between Section 4.3 and the remaining contractual documents. The other documents pertinent to the question are Plan Sheet # 12 and the boring logs.

The contract specifically excludes the boring logs. Hence what remains is Plan Sheet # 12 and the determination of whether or not that document, as part of the specifications and incorporated within the contract, is in conflict with Section 4.3.

No reference to the specifics of Plan Sheet # 12 is necessary because the stipulation of facts as part of this record provides the answer:

"26. A copy of Plan Sheet # 12, a Contract Document, entitled 'Boring Location' is attached hereto, as Exhibit # H.

27. Plan Sheet # 12 contains no information as to boring results or subsurface conditions."

Appellant argues Section 4.3 has no meaning because it conflicts with other contractual documents. Appellant's argument must fail because while specifications prevail or control over drawings, the specifications (as related to the instant contract) call for the removal of all material from the trench area. Appellant further argues the industry practice by subcontractors is to rely upon boring data. It is not for this court to decide the merit of that contention, but it suffices to say such allegation is outside the evidence in this case as controlled by the stipulation of facts between the parties.

In sum, the evidence reveals no conflict existed between Section 4.3 and the specifications. The evidence further reveals the contract specifically excludes the boring logs from the terms of the contract. It must follow there is no ambiguity as contended by appellant.

 Appellant also contends the trial court erred in concluding it was obligated to make an independent interpretation of subsurface conditions. Appellant argues that this could be economically unfeasible for subcontractors. Appellant misconstrues the trial court's use of the term "obligated". As that term is used in the instant case, it relates to the burden appellant must bear if it is to recover a claim for *extra and unforeseen work* under the facts of the instant case. The term is not used in the context of a condition precedent to a subcontractor compiling a bid.

Under the facts of the instant case, because of the above-referred-to exclusion of the test boring data coupled with contractual references sufficiently expressed to put appellant on notice of the opportunity to satisfy itself regarding subsurface conditions, the term "obligated", as used by the trial court, relates to appellant's claim for recovery.

Appellant bid the excavation contract and relied upon the test boring data, which was specifically excluded from the contract. The trial court, under the particular facts of this case, was correct in its expression of appellant's "obligation to make an independent interpretation of subsurface conditions".

The contract between the parties, including the specifications, displays no ambiguity as contended by appellant.

For the foregoing reasons, point (3) is ruled against appellant.

The evidence on the record of this case clearly shows the judgment of the trial court was supported by substantial evidence, it was not against the weight of the evidence, it did not erroneously declare the law, and did not erroneously apply the law.

The judgment is, in all respects, affirmed pursuant to Rule 73.01 as that rule has been interpreted by *Murphy v. Carron, Tockman v. Shower Doors, Inc.* and *Snadon v. Gayer, supra.*

All concur.