The CITY OF COLUMBIA, MISSOURI, a municipal corporation, Appellee,

v.

PAUL N. HOWARD COMPANY, a North Carolina corporation, Appellant.

John S. Hill, d/b/a Bruce Williams Laboratories, Inc.

No. 82–1907.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1983.

Decided May 11, 1983.

Rehearing and Rehearing En Banc Denied June 9, 1983.

Byron J. Beck, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., Daniel L. Fowler, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for appellant.

Thomas M. Schneider, Jones & Scott, Columbia, Mo., for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

PER CURIAM.

Paul N. Howard Company (Howard) appeals the district court's granting of the City of Columbia's motion for summary judgment in this construction contract dispute. Because we feel this case is inappropriate for summary judgment, we reverse the judgment of the district court.

## I.

In February and March, 1980 the City of Columbia advertised for bids for construction of a public sewer improvement. As a prospective bidder, Howard received a document entitled "Specifications and Documents, Columbia, Missouri, Sewerage Improvements." The Appendix to this document contained test boring logs. These logs contained the results of test bores of the subsurface conducted on the City's behalf. Howard claims that during construction it discovered that actual subsurface conditions differed substantially from that indicated by the test boring logs. It argues that it could prove that the test boring logs themselves were inaccurate as well as that they were not representative of actual subsurface conditions. Howard said it incurred an additional $137,000 in expenses as the result of the unanticipated conditions. Howard filed a claim with the City for this amount, saying it was entitled to payment for these expenses under the "differing site conditions" clause in the contract. The contract provides for reimbursement of costs resulting from "[s]ubsurface or latent physical conditions at the site differing materially from those indicated in this contract . . . ."

The City filed a petition for a declaratory judgment in state court, arguing that the test boring logs were not part of the contract and therefore Howard was not entitled to the additional compensation. The City relied on a disclaimer on the cover page of the test boring logs which read: "These reports are for reference only and are not a part of the contract documents." Howard removed the action to federal court based on diversity. Howard filed a counterclaim against the City, the City moved for summary judgment, and the district court granted the City's motion.

## II.

The district court found for the City because the differing site conditions clause only applied to information indicated in the contract, and the disclaimer proved that the test boring logs were not a part of the contract. The court relied on *Air Cooling & Energy, Inc. v. Midwestern Construction Co.*, 602 S.W.2d 926 (Mo.App.1980), which held that a subcontractor could not recover extra compensation even though test boring logs were inaccurate because the contract had a disclaimer as to the accuracy of the data. We find that the court below erred in relying solely on the disclaimer to conclude that the test boring logs could not be relied upon by the contractor.

There are at least two parts of the contract which indicate that the test boring logs were a part of the contract and could be relied upon by the contractor. First, Article IV of the contract states that "the Contract Documents which comprise the contract between Owner and Contractor, attached hereto and made a part hereof, consist of the documents listed in the Table of Contents . . . ." The test boring logs are listed in the Table of Contents under the heading of "Appendix." Second, one of the supplementary conditions of the contract, SC-20, states: "Test hole information represents subsurface characteristics to the extent indicated, and only for the point location of the test hole. Each Bidder shall make his own interpretation of the charac-

ter and condition of the materials which will be encountered between test hole locations." While this part of the contract supports the City's argument it is not responsible for unanticipated conditions *between* the test holes, it supports Howard's argument that it was entitled to rely on the logs at least as to the actual conditions at the location of the test holes.

██ The district court made no attempt to reconcile these parts of the contract which could be seen as inconsistent with the disclaimer. As a general proposition, whenever possible, the law favors reconciliation of clauses within a contract which appear contradictory. *In re Marriage of Buchmiller,* 566 S.W.2d 256, 259 (Mo.App.1978); *see* Restatement (Second) Contracts § 202(5) (1981). When we examine the contract, we feel the various parts of the contract can be read consistently with each other by interpreting the contract to mean that the contractor could rely on the test boring logs only for their own accuracy and not for the conditions between the test hole locations.

██ The test boring logs do not have to be strictly considered "a part of the contract documents" (which the Appendix states they are not) to be binding on the City to the extent of their own accuracy. We can accept the City's argument that the Appendix is not an item listed *in* the Table of Contents (but is an addition to the Table of Contents) and therefore the Appendix is not a part of the contract. However, the differing site conditions clause need not be interpreted to limit reimbursements to situations where the logs themselves are necessarily a part of the contract. The clause entitles the contractor to reimbursement when there are "conditions at the site differing materially from those *indicated* in this contract." (Emphasis added.) Even though the logs may not be included in the contract, they are "indicated" in the contract, in SC–20 "Test hole information rep-

resents subsurface characteristics to the extent indicated, and only for the point location of the test hole." SC–20 indicates the conditions by reference to the logs and specifically indicates the accuracy of the logs. This reference to the test hole information appears to be a sufficient indication of physical conditions to make the differing site conditions provision applicable. SC–20, in very clear and uncontradicted language, only vouches for the accuracy of the test hole data and not for the conditions between the test holes.[1]

The *Air Cooling* case does not command a different result. In that case the contract specifically repudiated responsibility for the *accuracy* of the test hole results. The contract stated: "Neither the owner nor the engineer will be responsible for the completeness of [sic] accuracy of data so furnished." 602 S.W.2d at 929. Here the disclaimer merely stated the logs were not a part of the contract.

Upon remand the district court will be free to take additional evidence on the interpretation of the contract, if it feels it needs to look beyond the four corners of the agreement to determine the meaning of the contract. *See Weldon, Williams & Lick, Inc. v. L.B. Poultry Co.,* 537 S.W.2d 868, 871 (Mo.App.1976); *E.O. Dorsch Electric Co. v. Plaza Construction Co.,* 413 S.W.2d 167, 172 (Mo.1967).

### III.

Howard also argues on appeal that it has a cause of action against the City independent of the *differing site conditions clause.* Howard argues that even if it has no remedy under that clause, it has a cause of action based on its reliance on a misrepresentation by the City. Howard relies on *Clark v. City of Humansville,* 348 S.W.2d 369 (Mo.App.1961), which held "where plans or specifications lead a public contractor reasonably to believe that conditions indi-

---

1. Our analysis is not affected by the City's argument that it disclosed the data only to avoid liability for nondisclosure. *Maurice Mandel, Inc. v. United States,* 424 F.2d 1252, 1255–56 (8th Cir.1970). We rely on a reasona-

ble interpretation of the contract, reconciling inconsistent provisions pursuant to Missouri law. Furthermore, in *Mandel* the test boring logs that were disclosed were accurate. *Id.* at 1256.

cated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented." *Id.* at 370, 374. This action sounds in tort rather than contract. *Id.* at 371, 374.

It is not clear whether the district court ruled on Howard's tort claim. The district court did not discuss the tort claim, but it did rely on the *Air Cooling* case, which discussed breach of warranty and *quantum meruit* theories of recovery, as well as breach of contract. 602 S.W.2d at 928–30. It would not be surprising if the district court did not intend to rule on Howard's tort claim because Howard did not present this theory in the district court with the clarity it has presented the theory on appeal. In Howard's counterclaim, it simply stated that it was entitled to rely on the accuracy of the logs. Howard's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment did not specifically refer to a tort theory independent of the contract. Howard made general references to its right to rely on the logs, but it did not even cite the principal case it uses on this appeal for supporting the tort theory— *Clark v. City of Humansville.*

 If the district court intended to rule on Howard's tort claim, we think summary judgment was inappropriate. Howard should have the opportunity to prove the elements of the tort cause of action listed in *Humansville.* The *Air Cooling* case does not require a different result. The explicit disclaimer of the accuracy of the test hole information in that case made any reliance unreasonable. 602 S.W.2d at 929–30.

If the district court did not rule on Howard's tort claim, that court should consider the claim in the first instance. If the court feels the issue had not been presented below, the court can permit Howard to amend its counterclaim pursuant to Fed.R. Civ.P. 15(a) to include the tort claim. Rule 15(a) states in pertinent part: "A party may amend his pleading ... by leave of court ...; and leave shall be freely given when justice so requires." The rule encour-

ages courts to look favorably on requests to amend "when justice so requires." C. Wright and A. Miller, Federal Practice and Procedure § 1484, at 417 (1971). An amendment can be proper after remand to the district court even if the claim was presented for the first time on appeal or had not been presented to the district court in a timely fashion. *Holland v. Parker,* 469 F.2d 1013, 1015–16 (8th Cir.1972); *International Ladies' Garment Workers' Union v. Donnelly Garment Co.,* 121 F.2d 561, 563 (8th Cir.1941); C. Wright and A. Miller, Federal Practice and Procedure § 1489, at 450 (1971).

Accordingly, the judgment of the district court is reversed and the case remanded for proceedings consistent with this opinion.