J & S SERVICES, INC., Appellant,

v.

Matthew A. TOMTER, and the State of Alaska, Department of Natural Resources, Appellees.

No. S–11375.

Supreme Court of Alaska.

July 21, 2006.

Herbert A. Viergutz, Anchorage, for Appellant.

Erin B. Marston and Colleen J. Moore, Marston & Cole, P.C., Anchorage, for Appellee Tomter.

Stephanie Galbraith Moore and David H. Knapp, Assistant Attorneys General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee State of Alaska, Department of Natural Resources.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

In this case we must determine whether the Alaska State Procurement Code's exclusive remedy provision bars a disappointed contractor from suing the state and a state procurement officer in contract and tort for money damages resulting from allegedly intentional misconduct in awarding a contract under a state-issued request for proposals. Here, because the exclusive remedy provision unequivocally bars J & S Services's civil action against the Department of Natural Resources, we affirm the superior court's dismissal as to the department. But by its own terms, the exclusive remedy provision applies only to claims against the state, so it does not categorically bar J & S's claims against Tomter individually. J & S's complaint against Tomter alleges intentional misconduct that potentially falls outside the scope of Tomter's official duties; that would not necessarily be shielded by Tomter's right to claim official immunity; and that could conceivably support a viable claim under the theories pleaded in the complaint and the facts shown in the record. We therefore conclude that dismissing the individual claim against Tomter was improper.

## II. FACTS AND PROCEEDINGS

In November 2001 the Department of Natural Resources issued a request for proposals (RFP), seeking to lease an airplane for fighting fires. Matthew Tomter, the department's director of aviation, was the project manager for the RFP. The request ultimately produced only one response by the original deadline, a proposal from J & S Services. After the department extended the original deadline, Tomter contacted several companies soliciting additional proposals. He reportedly complained to an officer of one of the companies he contacted that J & S was "a pain in the ass." A second company, Toram, submitted two proposals by the extended deadline date. One of Toram's two owners, Russ Torrison, was a close friend of Tomter. The company evidently had no prior experience in the sale or leasing of aircraft and was established for the sole purpose of responding to the RFP. Tomter communicated with Torrison repeatedly during the bid evaluation process. The department ultimately declared Toram's proposal superior to J & S's and awarded the contract to Toram.

J & S protested the award, but the department denied the protest. J & S then appealed to the commissioner of administration, complaining that the proposals had been unfairly scored. The commissioner granted an evidentiary hearing on J & S's claim of impropriety. Although the hearing officer found no actual impropriety and determined that Toram's proposal was clearly superior to J & S's, he nevertheless concluded that Tomter's numerous contacts with Torrison created an appearance of impropriety. On this limited basis, the hearing officer resolved the appeal in J & S's favor, recommending that the commissioner award the company its proposal preparation costs as damages. The commissioner adopted this recommendation as his final decision.

J & S appealed the commissioner's administrative ruling to the superior court. J & S also filed a separate superior court action against the department and Tomter. Its complaint accused Tomter individually and the department as his employer of improperly interfering with J & S's lease proposal and favoring Toram's by communicating with Torrison during the RFP process and unfairly evaluating the competing proposals. The complaint sought compensatory and punitive damages, advancing six causes of action in tort and contract, including misrepresentation, negligence, fraud, interference with prospective business advantage, breach of implied warranty, and breach of the covenant of good faith and fair dealing.

The department moved to dismiss J & S's complaint under Alaska Civil Rule 12(b)(6), asserting that the Alaska procurement code's exclusive remedy provision and the civil code's related immunity provision barred J & S from suing in tort or contract for damages arising from the procurement process, requiring it to pursue its administrative appeal as its sole source of relief. The department's motion advanced a number of alternative grounds for dismissal, including a theory that J & S's complaint failed to state a viable claim. In response to the dismissal motion, J & S asked the superior court to allow discovery; despite opposition by the department, the court allowed discovery to proceed.

After the parties conducted discovery and submitted additional pleadings, the superior court heard oral argument on the department's motion to dismiss. The department and Tomter renewed their original argument that the procurement code's exclusive remedy provision limited J & S's recourse to its separately pending administrative appeal. The superior court accepted this argument and dismissed the complaint against both the department and Tomter, based on the procurement code's exclusive remedy provision and the civil code's corresponding provision granting the state immunity from liability in a civil action arising out of a procurement dispute. The superior court awarded attorney's fees to the department, denied J & S's motion for relief from judgment, and entered final judgment against J & S.

The superior court stayed J & S's administrative appeal pending resolution of J & S's civil action. J & S now appeals the order dismissing its civil action.

## III. DISCUSSION

On appeal, J & S primarily contends that the superior court erred in dismissing its

complaint against the department and Tomter as barred by the exclusive remedy provision.[1]

## A. Standard of Review

■■■ In considering an appeal from a dismissal under Rule 12(b)(6), we apply de novo review,[2] "presum[ing] all factual allegations of the complaint to be true and [making] all reasonable inferences ... in favor of the non-moving party."[3] To survive a motion for dismissal under Rule 12(b)(6), "it is enough that the complaint set forth allegations of fact consistent with and appropriate to some enforceable cause of action."[4] Only if the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief," is dismissal proper.[5] But even a complaint that is sufficient on its face may be defeated by a properly pleaded affirmative defense.[6]

## B. Exclusive Remedy Provision

Alaska's State Procurement Code[7] sets out legal and contractual remedies for state procurement disputes in article 8, which is codified as AS 36.30.550–36.30.699. The key provision in article 8 at issue in this case is AS 36.30.690, which states: "Notwithstanding AS 44.77 or other law to the contrary, AS 36.30.560–36.30.699 and regulations adopted under those sections provide the exclusive procedure for asserting a claim against an agency arising in relation to a procurement under this chapter."

The "exclusive procedure" adopted by the code permits only one narrow administrative channel for obtaining relief and allows only a single, limited remedy: The code requires offerors to seek administrative review of a procurement officer's actions by appealing to the commissioner of administration, whose final decision may then be appealed to the superior court;[8] and when a disappointed offeror prevails, the code expressly limits the offeror's award of damages to "reasonable ... proposal preparation costs."[9] In *Bowers Office Products, Inc. v. University of Alaska*, we recognized that these provisions "create[ ] an exclusive remedy for 'interested parties' protesting the state's award of a purchasing contract."[10]

Alaska's Code of Civil Procedure confirms and reinforces the procurement code's exclusive remedy provisions by preserving the state's sovereign immunity from liability in any civil action arising from a procurement dispute. Although AS 09.50.250 generally waives the state's right to claim sovereign immunity as to persons "having a contract, quasi-contract, or tort claim against the state," the statute carves out an exception for procurement cases, providing, "A person who may bring an action under AS 36.30.560–36.30.695 may not bring an action under this section except as set out in AS 36.30.685."

### 1. Dismissal of claims against the department

■■ J & S's complaint against the department unquestionably amounts to "a claim against an agency arising in relation to a procurement" under AS 36.30.690; and J & S indisputably qualifies as "[a] person who may

---

1. Alternatively, J & S contends that the superior court erred in declining to reconsider its ruling in response to J & S's Rule 60(b) motion for relief from judgment. Our holding that the superior court erred in ruling that the exclusive remedy provision bars J & S from pursuing its complaint against Tomter makes it unnecessary to consider J & S's alternative argument.

2. *Kollodge v. State*, 757 P.2d 1024, 1026 n. 4 (Alaska 1988).

3. *Id.* at 1026 (quoting 2A J. MOORE & J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.–5], at 12–63 (1986)).

4. *Linck v. Barokas & Martin*, 667 P.2d 171, 173 (Alaska 1983).

5. *Shooshanian v. Wagner*, 672 P.2d 455, 461 (Alaska 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

6. *J & L Diversified Enters., Inc. v. Municipality of Anchorage*, 736 P.2d 349, 351 (Alaska 1987).

7. AS 36.30.

8. AS 36.30.685(a).

9. AS 36.30.585.

10. *Bowers Office Prods., Inc. v. Univ. of Alaska*, 755 P.2d 1095, 1098 (Alaska 1988).

bring an action under AS 36.30.560–36.30.695." Because these provisions unambiguously apply to J & S and allow only a narrow form of administrative redress, they appear to directly bar J & S from pursuing its contract and tort claims against the department.

Indeed, J & S offers no persuasive basis to avoid this conclusion. It suggests that the procurement code's remedies may be inadequate, and should not be applied, because its complaint alleges bad faith and deliberate misconduct. But we rejected similar arguments when we limited an unsuccessful bidder's remedy against the state to bid preparation costs in *King v. Alaska State Housing Authority*.[11] In *King*, we held that an agency impliedly contracts to give bids it solicits fair and honest consideration.[12] Adopting the rule in *Heyer Products Co. v. United States*,[13] we recognized that subjective bad faith on the part of procuring officials causes the state to breach its implied contract with the bidder.[14] We discussed how an unlimited damages remedy would subject the state to excessive litigation arising out of the procurement process, impede the right of the department to reject any and all bids, and force the public to pay twice, once for a bad procurement and a second time to compensate the wronged bidder,[15] and ultimately held that bid preparation costs were the only damages properly available to the bidder from the state.[16]

Accordingly, we conclude that the superior court correctly dismissed J & S's complaint against the department on the ground that the exclusive remedy provision barred the claims.

## 2. Dismissal of claims against Tomter

■ The same conclusion does not necessarily hold true with respect to J & S's claims against Tomter. As indicated above, the exclusive remedy provision and the corresponding immunity statute apply to a "claim against an agency"[17] and to a "claim against the state,"[18] but do not expressly bar claims against individuals.[19] Insofar as J & S makes claims against Tomter as a procurement officer acting within the course and scope of his duties, then, the exclusive remedy provision would appear to bar the complaint. But on the other hand, to the extent that J & S's complaint might be seen as an individual action against Tomter for deliberate and bad faith misconduct that falls outside the scope of his proper duties, then it might not be fair to characterize the complaint as a "claim against the state" or to dismiss it as barred by the exclusive remedy provision.

On its face, the complaint does not restrict J & S's claims against Tomter to actions he took in his official capacity. And neither the department nor Tomter cites any authority that would support automatically extending the exclusive remedy provision to conclusively bar, as claims "against an agency," all procurement-related complaints accusing individual public officials of engaging in deliberate acts of misconduct.

Nor does our decision in *King v. Alaska State Housing Authority* compel such a sweeping extension. *King* did not consider whether a bidder could sue an individual official in tort for acting in bad faith outside the scope of his duties; rather, it only considered the consequences to the state of breaching its implied contractual duty of good faith to a bidder. Although we recognized that "a promise of honest and fair consideration of bids can reasonably be implied in the public contract context," we emphasized the exclusive remedy provision's importance as a counterweight to the extra responsibility the

**11.** *King v. Alaska State Hous. Auth.*, 633 P.2d 256 (Alaska 1981) (holding later codified as AS 36.30.685, .690).

**12.** *Id.* at 261–63.

**13.** 135 Ct.Cl. 63, 140 F.Supp. 409 (1956).

**14.** *King*, 633 P.2d at 263 n. 7.

**15.** *Id.* at 260–61.

**16.** *Id.* at 263.

**17.** AS 36.30.690.

**18.** AS 09.50.250.

**19.** AS 36.30.690.

government bears as it contracts.[20] Yet this rationale loses much of its force when a bidder claims deliberate misconduct occurring outside the course of an official's usual duties and seeks damages from the individual rather than from the state.

To be sure, we recognize that allowing officials to be sued individually for intentional misconduct occurring under color of law might entail certain risks, such as discouraging proper as well as improper state action and encouraging efforts to evade the exclusive remedy provision. Yet we think that in the procurement context, as in other areas involving official misconduct, we can best address concerns like these using the traditional legal framework governing official immunity, rather than by artificially extending a limitation expressly drawn to apply only to claims against state agencies rather than against individual officials.

■ In determining the scope of official immunity for discretionary acts done within the scope of an official's authority, we generally seek to balance the public's interest in "efficient, unflinching leadership" and the interests of the injured parties by considering three factors: "(1) The nature and importance of the function that the officer performed to the administration of government ...; (2) The likelihood that the officer will be subjected to frequent accusations of wrongful motives and how easily the officer can defend against these allegations; and (3) The availability to the injured party of other remedies or other forms of relief...."[21] When dealing with core duties and vital functions, the balance sometimes favors applying a rule of absolute immunity.[22] But the balance more typically requires qualified immunity, which only protects public officials from acts done in good faith.[23]

In the procurement context, it seems likely that state officials would be entitled to absolute immunity against suits alleging impropriety in the performance of certain core functions, such as evaluating and scoring subjective components of competing offers. For present purposes, however, we need not resolve the issue. Here, the superior court dismissed J & S's complaint against Tomter on the sole ground that the action was barred by the exclusive remedy provision. The court did not rely on official immunity or undertake the balancing analysis necessary to determine if Tomter should be deemed absolutely immune or only immune if he acted in good faith. On appeal, the parties provide no meaningful briefing on this issue. But since J & S expressly alleges that Tomter acted in bad faith and engaged in a course of deliberate misconduct—potentially including illegal actions—it seems apparent that Tomter would be entitled to dismissal on grounds of official immunity only if he established circumstances affording him the right to claim absolute immunity. Tomter has shown no such circumstances, and we are unprepared to say as a matter of law that J & S could prove no set of facts under which Tomter would be unprotected by absolute immunity.[24] Accordingly, dismissing the individual claim against Tomter as barred by the exclusive remedy provision does not appear to be justified.

## C. Failure To State a Viable Claim

■ The department and Tomter alternatively claim that the superior court's judgment dismissing the complaint against both defendants was justified because J & S's complaint failed to allege facts sufficient to support any of the complaint's specifically alleged causes of action. This argument might have considerable merit if we strictly limited our consideration of this point to the facts set forth in J & S's complaint, as we ordinarily would in reviewing a dismissal under Civil Rule 12(b)(6). The complaint asserts claims against Tomter for misrepresentation, negligence, fraud, interference with prospective business advantage, breach of implied warranty, and breach of the covenant

**20.** *King,* 633 P.2d at 262.

**21.** *Aspen Exploration Corp. v. Sheffield,* 739 P.2d 150, 159–60 (Alaska 1987).

**22.** *Id.*

**23.** *See id.*

**24.** *See Shooshanian v. Wagner,* 672 P.2d 455, 461 (Alaska 1983).

of good faith and fair dealing. While the complaint on its face alleges facts that generally suggest the possibility of impropriety, such as Tomter's extensive contact with Toram during the proposal process and Tomter's failure to disclose to his superiors his close friendship with Toram's owner, it does not specifically describe any actions by Tomter that are patently improper, nor does it provide specific factual support for its conclusory allegations of bad faith misconduct. Even applying the charitable standard for dismissal under Rule 12(b)(6), which requires us to look at the complaint in the light most favorable to J & S and ask if there is any conceivable set of circumstances that, if proved, could support a viable claim, it seems difficult to glean facts from the complaint alone supporting a viable claim against Tomter for any intentional impropriety involving bad faith actions outside the scope of his official duties.

But the circumstances in this case militate in favor of a somewhat broader perspective. As already indicated, the superior court did not dismiss J & S's complaint against either the department or Tomter on the ground that it failed to state facts capable of sustaining a viable claim. To the contrary, even though the court had allowed J & S an opportunity for discovery in order to develop additional evidence supporting its claim, and even though J & S had addressed some of this evidence in its arguments before the superior court, the court ultimately dismissed the case as to both defendants on the narrow legal theory that the procurement code's exclusive remedy provision categorically barred J & S from maintaining its suit. In spite of the parties' opportunity for discovery, then, this narrow ground for dismissal gave J & S no reason to move to amend its complaint to incorporate newly discovered facts to flesh out the original complaint's bare-boned allegations. Since it seems likely under these circumstances that J & S would have been entitled—and might still be entitled—to amend its complaint before a final dismissal for failure to state a claim, we think that basic fairness requires us to judge the sufficiency of the complaint on appeal by considering not just the facts recited in the original complaint, but all newly discovered facts in the superior court record that J & S might have included in an amended complaint.[25]

Considering this slightly expanded universe of facts as if it were true and drawing all reasonable inferences arising from those facts in favor of J & S, we find it conceivable that the complaint sets forth "allegations of fact consistent with and appropriate to some enforceable cause of action."[26] Or stating the proposition conversely, we cannot rule out the possibility of a viable claim.

Specifically, J & S alleges facts tending to indicate that Tomter displayed animosity toward J & S, went out of his way to prevent the company from winning the lease, and actively helped its competitor, Toram, succeed. Both Janet Burts, the vice president of an aviation company that had supplied the department in the past, and her husband Doug Burts, a department employee who sat on the RFP review committee, stated that Tomter had openly disparaged J & S and had expressed reluctance to award the contract to it, describing it as "a pain in the ass." Toram, in turn, was co-owned by a close personal friend of Tomter, Russ Torrison, who, after being contacted by Tomter,

**25.** Alaska Civil Rule 15(a) allows parties to amend their pleadings by leave of the court after the initial time period set out in the rule expires and commands that leave is to be freely granted when justice so requires. *Prentzel v. State, Dep't of Pub. Safety,* 53 P.3d 587, 590–91 (Alaska 2002) ("Typical reasons for denying leave to amend include the added expense and increased burden the opposing party is likely to face as a result of the amendment. But a party should be permitted to amend if there is no showing that amending would cause injustice."). Amendment to the pleadings may be proper on remand. *Swift v. Kniffen,* 706 P.2d 296, 305 n. 11 (Alaska 1985) (directing the trial court to entertain a motion by plaintiffs to amend the complaint to include a new cause of action based on a case decided while the appeal was pending) (citing *City of Columbia v. Paul N. Howard Co.,* 707 F.2d 338, 341 (8th Cir.1983) ("An amendment can be proper after remand to the district court even if the claim was presented for the first time on appeal or had not been presented to the district court in a timely fashion.")).

**26.** *Linck v. Barokas & Martin,* 667 P.2d 171, 173 (Alaska 1983).

formed the company with another individual for the specific purpose of responding to the RFP. Neither Torrison nor his co-owner had any prior experience leasing aircraft. During the course of the bid evaluation process, Tomter repeatedly communicated with Torrison. Tomter never informed his superiors in the department of his friendship or communications with Torrison. More important, Doug Burts also provided deposition testimony suggesting that Tomter had made arrangements to receive kickback payments from Toram: According to Burts, Tomter had said that Burts could expect to receive money from Toram if Toram was awarded the contract.

When viewed in totality and accepted as true, these allegations could reasonably suggest the existence of a scheme to favor Toram in return for personal payments to Tomter—a fraudulent arrangement that would fall well beyond the outer limits of Tomter's official duties. Bad faith actions of this kind could also potentially fall outside the protections afforded by qualified, or good-faith, official immunity. And the alleged misconduct could also conceivably fit into one or more of the specific causes of action alleged in J & S's complaint.

██ For example, the complaint specifically alleges that Tomter's actions amounted to an intentional interference with J & S's prospective economic advantage. We have previously recognized this tort in Alaska, holding that a person who is pursuing "reasonable and legitimate prospects" of entering into an economic relationship with another is protected from a third person's wrongful conduct that aims to disrupt that relationship.[27]

To make out a prima facie case for this tort, the plaintiff must show:

(1) the existence of a prospective business relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship, and intent to prevent its fruition; (3) conduct by the defendant interfering with the relationship; (4) failure of the prospective relationship to culminate in pecuniary benefit to the plaintiff; (5) causation of the plaintiff's damages by the defendant's conduct; and (6) absence of privilege or justification for the defendant's action.[28]

This cause of action provides a potentially viable theory to address J & S's chief complaint about Tomter: that Tomter, motivated by animosity against J & S and a desire for personal financial gain, abused his position as a participant in the procurement process to prevent J & S from forming a contract with the state.[29] Alternatively, the same allegations might fairly be characterized as fitting J & S's claim of an intentional misrepresentation—also alleged in the complaint. In ruling that J & S advances sufficient facts under these theories to avoid dismissal under Rule 12(b)(6), we need not definitively endorse or approve either theory; rather, it suffices to conclude that neither the department nor Tomter has authoritatively ruled out the possibility that J & S might prevail under one or both. We thus decline to hold that dismissal for failure to state a claim provides an alternative basis for affirming the superior court's judgment against J & S as to Tomter.

**27.** *Ellis v. City of Valdez*, 686 P.2d 700, 707–08 (Alaska 1984).

**28.** *Hayes v. A.J. Assocs., Inc.*, 960 P.2d 556, 571 (Alaska 1998).

**29.** We note that in an analogous setting, the Connecticut Supreme Court has recognized that a real estate developer alleging deliberate misconduct by a planning board for denial of his subdivision proposal might have a potentially viable action against individual board members on a claim of intentional interference with business relations. *See Kelley Prop. Dev., Inc. v. Town of Lebanon*, 226 Conn. 314, 627 A.2d 909, 910, 923 n. 30 (1993) (relying in relevant part on *Multi–Service Contractors, Inc. v. Town of Vernon*, 193 Conn. 446, 477 A.2d 653, 655–56 (1984) (stating that a tort claim under this theory could proceed if the plaintiff alleged sufficient facts to show bad faith by officials, which would effectively render them third parties to the contract they were charged with procuring for the town in their official capacities)). *Cf. Conway Corp. v. Constr. Eng'rs, Inc.*, 300 Ark. 225, 782 S.W.2d 36, 40–41 (1989) (recognizing that individuals contracting on behalf of a municipal corporation could be sued individually for their interference with the contract they were employed to secure, even though a tort action could not be maintained against the municipal corporation).

### D. Attorney's Fees

 J & S separately challenges the superior court's award of attorney's fees to the department. Our decision to reverse the dismissal as to Tomter requires us to vacate the award of fees to the department, even though we affirm the order dismissing the complaint as to the department. Because this case is a single action against two defendants, dismissal as to only one of the two defendants cannot support entry of a final judgment for the other in the absence of an express finding of good cause for a partial judgment under Alaska Civil Rule 54(b). The existence of cause to enter such a judgment must be decided on remand. And in any event, because Tomter is no longer a prevailing party, the award to the department will likely need to be reconsidered in any event, to eliminate assessing costs against J & S for time spent by the state in defending Tomter.

## IV. CONCLUSION

The exclusive remedy provision of the procurement code bars J & S's claims against the department, but does not necessarily bar J & S's claims against Tomter as an individual. And as the record currently stands, failure to state a viable claim against Tomter does not provide a proper alternative ground for dismissal. We therefore AFFIRM the superior court's order of dismissal as to the department but REVERSE the dismissal as to Tomter and REMAND for further proceedings on that claim after J & S is given an opportunity to amend its complaint. We VACATE the award of attorney's fees as premature and REMAND for further proceedings on that issue in keeping with this opinion.