**Corbin KOOLY, individually and as Personal Representative of the Estate of Daniel Glenn Craig, deceased, and Shannon Kooly, Appellants,**

v.

**STATE of Alaska, Appellee.**

No. S-7207.

Supreme Court of Alaska.

May 22, 1998.

Dale J. Walther, Walther & Flanigan, Anchorage, for Appellants.

Venable Vermont, Jr., Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

---

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

MATTHEWS, Justice.

## I. *INTRODUCTION*

Three-year-old Daniel Craig drowned when he slipped into a partially-frozen creek at the bottom of a popular sledding hill. We must decide whether the State of Alaska can be held liable for his death because the sledding hill was part of a state right-of-way. We conclude that it cannot because the State does not owe a duty of care to sledders on its rights-of-way.

## II. *FACTS AND PROCEEDINGS*

On December 12, 1993, Shannon Kooly took her son Daniel and several other children sledding at an area known as the Beaver Creek sledding hill. The sledding hill is located in a state right-of-way adjacent to the Kenai Spur Highway near Beaver Creek. Beaver Creek runs through an open culvert beneath the highway.[1] The sledding hill parallels the highway and lies perpendicular to the creek and culvert. The State acknowledges that the hill "has been used as a sledding hill by local residents for many years," but asserts that it "is not a formal recreational area."

Daniel and his seven-year-old cousin Billy were both on the sled when it went into the water through a small hole in the ice. Billy was able to escape from the creek; Daniel was swept underneath the ice and drowned. Although most of the creek was frozen, an open area of shallow, running water was visible near the culvert. Shannon Kooly remembered seeing the open water but had not been aware of the smaller hole into which Daniel fell.

The Koolys filed suit against the State, alleging that its "negligent failure to close and sign the sledding hill as unsafe for sledding" was the proximate cause of their son's death. The Koolys alternatively alleged that the State was negligent in "failing to eliminate the water hazard at the bottom of the sledding hill by use of enclosed culverts, or barriers."

The State moved for summary judgment on the basis that the Koolys' complaint implicated discretionary state functions, immune from negligence suits under AS 09.50.250(1). Relying on *Estate of Arrowwood v. State*, 894 P.2d 642 (Alaska 1995) and *Earth Movers of Fairbanks, Inc. v. State*, 691 P.2d 281 (Alaska 1984), the superior court granted the State's motion for summary judgment. It ruled that both of the Koolys' negligence claims were barred because the State

> exercised discretion in its decision not to close the sledding hill in this case, just as it did in deciding not to close the Parks Highway in *Arrowwood*. It likewise employed discretion in deciding whether or not to erect a barrier at Beaver Creek.

As the parties failed to address the threshold issue regarding whether the State owed the decedent a duty of care, we requested supplemental briefing.[2] Having reviewed the record, the briefs, and the supplemental briefs, we now resolve this appeal on duty of care grounds.

## III. *STANDARD OF REVIEW*

In reviewing summary judgment rulings we independently "determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts." *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992). We review questions of law *de novo*. *See Kenai Peninsula Borough v. Port Graham Corp.*, 871 P.2d 1135, 1141 (Alaska 1994). We may affirm the judgment of the trial court on any basis appearing in the record. *See Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n*, 825 P.2d 867, 869 n. 2 (Alaska 1992).

---

1. Both the highway and the culvert were originally built by the federal government in the 1950s.

2. We decline to entertain additional theories of liability advanced for the first time by the Koolys in their supplemental briefs.

## IV. DISCUSSION

Determining whether a duty exists in the type of case presented is the first analytical step in deciding whether a negligence action can be maintained.[3] In *City of Kotzebue v. McLean,* 702 P.2d 1309 (Alaska 1985), we observed that " '[d]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Id.* at 1313 (quoting W. Prosser, *The Law of Torts* § 53, at 325 (4th ed.1971)).[4] When it is not governed by statute, the existence of a legal duty is a public policy question. In *D.S.W. v. Fairbanks North Star Borough School District,* 628 P.2d 554, 555 (Alaska 1981), we identified several factors that guide our inquiry into when a duty should be imposed as a matter of policy:

[1] The foreseeability of harm to the plaintiff, [2] the degree of certainty that the plaintiff suffered injury, [3] the closeness of the connection between the defendant's conduct and the injury suffered, [4] the moral blame attached to the defendant's conduct, [5] the policy of preventing future harm, [6] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [7] the availability, cost and prevalence of insurance for the risk involved.

In our recent decision of *Schumacher v. City and Borough of Yakutat,* 946 P.2d 1255 (Alaska 1997), we applied these factors in a closely analogous context.[5] In *Schumacher,* twelve-year-old Charles Milton sledded down a city street into an intersection and was injured when struck by a car. *See id.* at 1256. Charles had been repeatedly warned by his father not to sled on the street, including on the day of the accident. *See id.* The City was aware that children frequently used that particular street for sledding. *See id.* In refusing to hold the City liable for Charles's injuries, we said:

While several of the factors outlined in *D.S.W.* militate in favor of the existence of a duty in this case, these factors are outweighed by "the extent of the burden to the defendant and consequences to the community of imposing [such] a duty." [*D.S.W.,* 628 P.2d] at 555. In essence, Schumacher is arguing that this court should impose liability on anyone who is aware of another's self-destructive behavior, has any ability to prevent that behavior, and fails to save the injured party from his or her own conduct. Such a holding would transform the law of negligence from a means whereby a person may recover for losses caused by a danger which another's unreasonable behavior created, to a mechanism permitting persons injured by their own conduct to compel any who failed to prevent that conduct to share the burdens of their negligence. We decline to permit such a result. Therefore, we hold that a city cannot be liable for failure to take specific steps to prevent sledding in its streets, or to ensure that its streets were safe for sledding. Accordingly, we conclude that the City owed no duty to protect Charles from the dangers inherent in sledding into an intersection.

*Id.* at 1257 (footnotes omitted).

Guided by *Schumacher,* we similarly conclude that the public owner of a highway right-of-way has no duty to make the right-of-way safe for sledding. We do not limit our inquiry to the particular facts of this

---

**3.** *See Stephens v. State, Dep't of Revenue,* 746 P.2d 908, 910 (Alaska 1987) ("Before we determine whether a statutory immunity applies to a given case, we will determine whether the State would be liable to the plaintiff in the absence of the immunity."); *see also Schumacher v. City & Borough of Yakutat,* 946 P.2d 1255, 1257 (Alaska 1997); *Hawks v. State, Dep't of Pub. Safety,* 908 P.2d 1013, 1016–17 (Alaska 1995).

**4.** In *Busby v. Municipality of Anchorage,* 741 P.2d 230 (Alaska 1987), we elaborated on this concept:

Thus stated, the process of finding that a defendant owes a duty to a plaintiff is one which involves a fine balancing of conflicting policies; it is in essence an attempt to determine whether it would be fair and equitable to require an individual to act, or to refrain from acting, in a specified manner so as to avoid undue risk of harm to third persons.

*Id.* at 232–33 (citing W. Keeton et al., *The Law of Torts* § 53, at 356–58 (5th ed.1984)).

**5.** Another recent case applying the *D.S.W.* factors is *Karen L. v. State,* 953 P.2d 871 (Alaska 1998).

case. We take as well a generalized approach which asks whether a duty of care should be imposed in the general class of cases involving sledding and similar uses of public rights-of-way. "[F]act-intensive inquiries pertain to the issues of breach, causation, and damages, not the threshold legal question of whether a duty exists." *Bolieu v. Sisters of Providence in Wash.*, 953 P.2d 1233 (Alaska 1998). We now turn to a discussion of the *D.S.W.* factors.

Addressing the first factor, sledding is a common activity that usually does not result in injury. Sometimes, however, people sled where it is dangerous. This is foreseeable as are, unfortunately, the injuries and deaths that result.[6] Turning to the particular facts of this case, the record reveals that local residents have used the area in question for sledding purposes for many years. Prior to Daniel Craig's death, the State had received no indication that Beaver Creek's proximity to the sledding hill posed a danger to sledders.[7]

In regard to the second factor, it is not disputed that the tragedy which gave rise to this case occurred.

Concerning the third factor, the lack of a close connection between the State's conduct and the accident militates against imposition of a duty here. The State never formally dedicated the sledding hill as a recreational area and has never undertaken a duty to make highway rights-of-way safe for all potential uses and users.[8] We conclude, as we did in *Schumacher*, that the fatal injury sustained by Daniel is more closely connected with the conduct of those other than the State than with the State's actions.

Regarding the fourth *D.S.W.* factor, we conclude that there is little if any moral blame that can be assigned to the State. The extent of state-owned rights-of-way, the State's lack of actual notice that Beaver Creek posed a danger to sledders, and the fact that policy decisions are implicated convince us that the State's actions cannot be characterized as blameworthy.

Further, we are not persuaded that saddling the State with a duty of care to all users of its extensive rights-of-way would significantly advance the policy of preventing future harm. Will imposing liability on the State for accidents such as this one make its rights-of-way safer for sledders and other users? The answer is probably "no" in view of the innumerable undeveloped roadside areas attractive for such recreational uses and the infeasibility of maintaining each area in a safe condition for sledders.

Finally and most important to our analysis here is the sixth factor. Given the varied terrain in Alaska, it is not possible to make the thousands of miles of state rights-of-way adjacent to highways safe for sledding. Any effort to do so would be both expensive and futile. Imposing such a duty would simply inflict heavy damage judgments on the State with little or no corresponding increase in public safety.[9]

We conclude as a matter of policy that the State owes no duty of care to sledders on

6. We noted that foreseeability was the single most important criterion for imposing a duty of care in *R.E. v. State*, 878 P.2d 1341, 1346 (Alaska 1994) (citing *Division of Corrections v. Neakok*, 721 P.2d 1121, 1125 (Alaska 1986)). In this case, however, the burden and consequences of imposing liability are the most important considerations. *See Schumacher*, 946 P.2d at 1257.

7. In January 1993 Nicole Goggia was killed at the same sledding area when she crashed into a tree. Unknown persons removed the tree soon after the accident.

8. The State persuasively argues that maintaining highway rights-of-way for the widely dispersed, all-season, multifaceted uses that are made of them is a duty that the State has never undertaken. Instead,

it has simply opened the rights-of-way to travel by the public. Never has the state made a decision to span creeks in the rights-in-way [sic] with bridges, or to sign rights-of-way (as opposed to roadway surfaces) or to level out the hills and ravines found in the rights-of-way adjacent to highways. It would be too much to expect the state to do this; the Koolys blithely ignore the budget realities of such an undertaking.

9. Concerning the seventh *D.S.W.* factor, the record is silent as to the availability of insurance. Although the State may have been able to obtain liability insurance to compensate injured users of its rights-of-way, in light of our foregoing analysis we do not consider this factor to be determinative.

highway rights-of-way. Therefore we hold that the superior court's grant of summary judgment to the State was proper.

## V. CONCLUSION

The superior court's grant of summary judgment in favor of the State of Alaska is AFFIRMED.