ESTATE OF Shawn Martin MICKEL-SEN by Its Administrator, Yong Ae MICKELSEN, Appellant,

v.

NORTH–WEND FOODS, INC. and S & S Properties, LLC, Appellees.

No. S–13482.

Supreme Court of Alaska.

April 27, 2012.

---

**20.** *Id.*

Mark Choate, Juneau, for Appellant.

Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

An eastbound driver attempted to make an illegal left turn into a restaurant's exit driveway. The eastbound driver collided with an oncoming westbound driver, killing the westbound driver. The decedent's estate sued the restaurant for wrongful death, arguing that the restaurant was negligent in creating a dangerous condition on its land and failing to take steps to make the condition safe, for example, by warning eastbound drivers not to use the exit driveway in this manner. The superior court dismissed the complaint, holding that the restaurant had no duty to guard against risks created by the conduct of third parties. Because the complaint, read liberally, stated a cause of action, we reverse the decision of the superior court and remand for further proceedings consistent with this opinion.

## II. FACTS AND PROCEEDINGS

### A. Facts [1]

■ Wendy's Old Fashioned Hamburger Restaurant sits on the northwest corner of East Fifth Avenue and Reeve Boulevard in Anchorage. The building and land are owned by S & S Properties, LLC and the restaurant is operated by lessee North–Wend Foods, Inc. There is only one legal entrance for customers in vehicles to access the restaurant; that entrance is located on Reeve Boulevard. There are two legal exits for vehicles leaving Wendy's; vehicles can exit either via the same curb-cut as the Reeve Boulevard entrance, or via a curb-cut on East Fifth Avenue. The East Fifth Avenue exit was not intended or designed as an access point for vehicles entering Wendy's from East Fifth Avenue. Instead, it is used by vehicles exiting Wendy's after visiting the drive-through window.

Generally, a person driving eastbound on East Fifth Avenue who wants to enter Wendy's must do so by first turning left onto Reeve Boulevard and then using the Reeve Boulevard entrance. However, an eastbound driver on East Fifth Avenue could also choose to take a "short-cut" and enter Wendy's via the East Fifth Avenue curb-cut by making an illegal left turn, crossing the double-yellow line, and crossing two lanes of westbound traffic. This short-cut would give the driver wrong-way access to a one-way driveway that circles around the building to the Wendy's parking lot. Because the width

---

1. These facts are taken mainly from Mickelsen's complaint. Factual allegations in a plaintiff's complaint are assumed to be true for purposes of resolving a motion to dismiss under Alaska Civil Rule 12(b)(6). *See J & L Diversified Enters. v. Municipality of Anchorage*, 736 P.2d 349, 351 (Alaska 1987). Some facts are also taken from our observations of photographs of the collision site Mickelsen provided to the superior court at oral argument on the dismissal motion. None of these latter facts is inconsistent with any of the allegations of the complaint. Accordingly, we consider them pursuant to the obligation of a court, in passing on the sufficiency of a complaint, to draw all reasonable inferences in favor of the complainant. *See infra* note 3 and accompanying text.

of the curb-cut accommodates only one vehicle at a time, drivers must often roll one tire over the raised curb in completing the short-cut maneuver. Wendy's customers use this short-cut on a regular basis, something which can be readily observed from inside the restaurant.

On March 27, 2006, Lawrence W. Hayward was driving a pick-up truck eastbound on East Fifth Avenue when he attempted to use the short-cut to enter Wendy's. As Hayward was crossing the westbound traffic lanes, a westbound motorcycle driven by Shawn Mickelsen collided with the pick-up truck. Mickelsen died as a result of the injuries he received in the collision.

### B. Proceedings

In March 2008 Mickelsen's estate ("Mickelsen") brought a wrongful death action against landowner S & S Properties and lessee North–Wend Foods (collectively "Wendy's"). Mickelsen's complaint asserted that "[t]he use of the 5th Avenue exit as a short-cut entry to the Wendy's Restaurant is a structure or artificial condition that posed an unreasonable risk of harm to west-bound traffic on 5th Avenue," that Wendy's knew or should have known of this dangerous condition, and that Wendy's "failure to take action to make this dangerous condition safe" was a breach of its duty of care and a substantial factor in Mickelsen's death.

Wendy's moved to dismiss the complaint under Alaska Civil Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Wendy's argued that it had "no legal duty ... to control the actions of third parties or to prevent car accidents or improper driving." Mickelsen opposed the motion, arguing that "[a]s possessors of land on which a business is operated adjacent to a busy thoroughfare ... [Wendy's] had a duty of care not to let conditions on their property create an unreasonable risk of harm to passing motorists." Mickelsen also asserted that from East Fifth Avenue, "there is no visible indication that [the East Fifth Avenue curb-cut] is meant as an exit only, and [it] can easily be misconstrued as an entrance." In its reply to Mickelsen's opposition, Wendy's

asserted that "nothing on [its] property caused or contributed to the accident" and that Mickelsen had not identified "any condition controlled by [Wendy's] that was unsafe."

Superior Court Judge Peter A. Michalski heard oral argument on the motion. At various points in the argument, Mickelsen identified the dangerous condition which gave rise to Wendy's duty of care as the "exit that is used as an entry," "the use of that exit as an ingress point," and the exit which "attracts drivers" to use it as an entry. Mickelsen also asserted that the curb-cut was dangerous because of "poor design" and that Wendy's could remedy the problem by either closing the exit or affixing a "No Entry" sign. Mickelsen argued that Wendy's owed a duty of care to all westbound drivers "[n]ot to create a condition which would cause vehicles to pull across their path into" the property.

Following oral argument, Judge Michalski granted Wendy's motion to dismiss the complaint under Civil Rule 12(b)(6) because "the complaint only alleges wrongful acts by third parties and conditions created by third parties," and not wrongful acts or conditions created by Wendy's. The court explained:

> As a general rule, landowners have a duty to use due care to guard against unreasonable risks created by dangerous conditions existing on their property. The condition, however, "does not include the conduct of third parties."
>
> Mickelsen's complaint alleges[:] "The *use* of the 5th Avenue exit as a short-cut entry to the Wendy's Restaurant is a structure or artificial condition that posed an unreasonable risk of harm to west-bound traffic on 5th Avenue." The complaint does not allege that the design of the entrance and exits in themselves are dangerous or that defendants failed to properly designate the entrances and exits to the property.[2]

Following its grant of Wendy's motion to dismiss, the superior court entered a final judgment in favor of Wendy's. Mickelsen appeals.

**2.** The formatting of the original quotation has been altered and citations have been omitted.

## III. STANDARD OF REVIEW

 In considering an appeal from a dismissal under Civil Rule 12(b)(6), we apply de novo review, presuming all factual allegations of the complaint to be true and making all reasonable inferences in favor of the non-moving party.[3] "To survive a motion for dismissal under Rule 12(b)(6), it is enough that the complaint set forth allegations of fact consistent with and appropriate to some enforceable cause of action."[4] We will affirm dismissal only if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[5]

 The existence and extent of a duty of care are questions of law which we decide de novo, using our independent judgment to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[6]

## IV. DISCUSSION

Mickelsen first argues that the superior court erred by incorrectly applying the law pertaining to motions to dismiss under Rule 12(b)(6). He then argues that the superior court erred as a matter of law in concluding that Wendy's owed no duty to Mickelsen, and that therefore the dismissal of his complaint was improper. We address these arguments in turn.

### A. The Superior Court's Reading Of The Complaint Was Unduly Narrow.

Mickelsen argues that the superior court incorrectly applied the law for testing the sufficiency of his complaint under Rule 12(b)(6). Specifically, he argues that the superior court erred because it did not presume the truth of the allegations in his complaint, it ignored some of his factual assertions, it

did not make reasonable inferences in his favor, and it "focuse[d] on a narrow interpretation" of the facts Mickelsen pled in support of Wendy's duty of care.

 As noted above, a court testing the sufficiency of a complaint under Rule 12(b)(6) must presume all allegations in the complaint to be true and must draw all reasonable inferences in favor of the complainant.[7] Because complaints must be liberally construed, motions to dismiss under Rule 12(b)(6) are disfavored and should rarely be granted.[8] To survive,

> [a] complaint need only allege a set of facts "consistent with and appropriate to some enforceable cause of action." Therefore, a complaint should not be dismissed for failure to state a claim *unless it appears beyond doubt* that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.[9]

Here, citing *Schumacher v. City & Borough of Yakutat*[10] for the rule that landowners have no duty to protect others from risks created by the conduct of third parties,[11] the superior court concluded that Mickelsen had not stated a valid claim because his complaint "only alleges wrongful acts by third parties and conditions created by third parties, not the defendants," and "does not allege that the design of the entrance and exits in themselves are dangerous or that defendants failed to properly designate the entrances and exits to the property." We agree with Mickelsen that the superior court's reading of the complaint was unduly narrow.

Mickelsen's complaint contains the following allegations:

---

**3.** *J & S Servs., Inc. v. Tomter,* 139 P.3d 544, 547 (Alaska 2006).

**4.** *Id.* (internal quotation marks omitted).

**5.** *Id.*

**6.** *State v. Sandsness,* 72 P.3d 299, 301 (Alaska 2003); *N. Kenai Peninsula Rd. Maint. Serv. Area v. Kenai Peninsula Borough,* 850 P.2d 636, 639 (Alaska 1993) ("On questions of law ... [our] duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.").

**7.** *See supra* note 3 and accompanying text.

**8.** *Angnabooguk v. State, Dep't of Natural Res., Div. of Forestry,* 26 P.3d 447, 451 (Alaska 2001).

**9.** *Id.* (emphasis added and citation omitted).

**10.** 946 P.2d 1255 (Alaska 1997).

**11.** *Id.* at 1258.

8. There is one legal entry for customers in vehicles to access Wendy's. That entry is from Reeve Boulevard.

10. There are two legal exits for·vehicles from Wendy's. The first and main exit is out the same curb cut as the Reeve Boulevard entry. The second allows vehicles, primarily using the drive-through, to exit onto 5th Avenue.

11. Wendy's customers who are east-bound on 5th Avenue must wait for a left turn arrow or traffic to clear to turn onto Reeve Boulevard to use the Reeve entry.

12. Wendy's customers in the 5th Avenue turning lane can take a "short-cut" into the property from 5th Avenue by crossing the double yellow line, crossing the two west bound traffic lanes, entering the drive-through exit and then circling around the east side of the building.

13. Wendy's customers use this short-cut to get to the restaurant on a regular basis.

14. Customers using this short-cut into the 5th Avenue exit are readily observable from the inside of the Wendy's Restaurant by managers, employees and customers.

16. On March 27, 2006, Lawrence W. Hayward, attempted to use this short-cut to enter the one-way 5th Avenue exit in order to buy lunch at·Wendy's.

19. While crossing the west-bound lanes of 5th Avenue to enter in through the drive-through exit, Hayward's truck was struck by a motorcycle. The driver of the motorcycle, Shawn Martin Mickelsen, died as a result of the injuries he received.

. . . .

23. The use of the 5th Avenue exit as a short-cut entry to the Wendy's Restaurant is a structure or artificial condition that posed an unreasonable risk of harm to west-bound traffic on 5th Avenue.

24. The defendants knew or should have known of this dangerous condition because such use occurs on a daily basis.

25. The defendants knew or should have known of this dangerous condition because it is readily observable from the restaurant by looking out the south facing windows onto 5th Avenue.

26. Defendants['] failure to take action to make this dangerous condition safe was a breach of their duty of care.

27. Defendants['] conduct in creating and allowing this dangerous condition to exist evidenced "reckless indifference to the interest of another person" warranting the award of punitive damages pursuant to Alaska Stat. § 09.17.020.

█ Reading Mickelsen's complaint liberally, as we must,[12] Mickelsen's complaint alleges that Wendy's created an entry and exit system that had the effect of enticing Wendy's patrons to enter the premises by making an illegal turn across two lanes of traffic, that Wendy's customers in fact regularly used the short-cut, that Wendy's was or should have been aware of such use, and that this dangerous condition led to the fatal accident. "In order to establish a cause of action for negligence, a plaintiff must show a duty of care owed to him by the defendant, a breach of that duty, and that damage was proximately caused by the breach."[13] Mickelsen's allegations are sufficient to state a negligence cause of action. The facts pled by Mickelsen invoke a landowner's duty of care, as we conclude in greater detail in the following section. Mickelsen's complaint adequately alleges that Wendy's breached that duty by creating and allowing the continued existence of a dangerous condition, and that Wendy's breach proximately caused the damages at issue in this case. This is sufficient to overcome a motion to dismiss for failure to state a claim for relief.

### B. Wendy's Owed A Duty Of Care To Mickelsen.

As noted above, before a defendant can be held liable for negligence, it must be established that the defendant owed a duty of care to the plaintiff.[14] Here, the superior court

---

**12.** *Angnabooguk,* 26 P.3d at 451.

**13.** *Shooshanian v. Wagner,* 672 P.2d 455, 464 (Alaska 1983) (citing *Leigh v. Lundquist,* 540 P.2d 492, 494 (Alaska 1975); *Larman v. Kodiak Electric Ass'n,* 514 P.2d 1275, 1279 (Alaska 1973)).

**14.** *Id.; Bolieu v. Sisters of Providence in Wash.,* 953 P.2d 1233, 1235 (Alaska 1998); *see also Dore v. City of Fairbanks,* 31 P.3d 788, 791 (Alaska 2001) ("Determining whether a duty exists in the type of case presented is the first analytical step

granted Wendy's Rule 12(b)(6) motion because it concluded, based on the allegations in the complaint, that Mickelsen had not pled facts sufficient to establish that Wendy's owed Mickelsen a duty of care to prevent the third-party behavior that caused Mickelsen's death. Mickelsen argues that the superior court erred as a matter of law in reaching that conclusion.[15]

■ The existence of a duty turns not on the particularized facts of a given case, but rather on the "basic nature of the relationship between the parties to the cause of action."[16] Here, the parties use different terms to define that basic relationship. In Mickelsen's view, the operative relationship is between a highway-adjacent commercial property owner whose customers regularly gain access to the property from that highway, and the other motorists who may be put at risk by the property owner's active "governance of the access of those customers." In Wendy's view, the operative relationship is between a passive property owner and the motorists who may be put at risk by the negligent conduct of "third parties" (the potential patrons) on the public streets adjacent to the property.

■ We use a three-step process to determine whether a duty of care exists. First, we look for a duty imposed by statute.[17] If none exists, we then determine if the current case falls in the class of cases controlled by existing precedent.[18] If no closely related

case law exists, we weigh the public policy considerations enumerated in *D.S.W. v. Fairbanks North Star Borough School District.*[19] Here, Mickelsen does not allege a statutory duty, so we turn first to the case law.

### 1. This case is not controlled by our precedents in the *Schumacher* and *R.E.* lines of cases.

Wendy's argues that the current case falls within two lines of existing cases, both of which would lead to the conclusion that no duty of care exists: the *Schumacher*[20] line of cases and the *R.E.*[21] line of cases. We discuss both in turn.

■ The general rule of landowner liability as established by our case law is that landowners have a "duty to use due care to guard against unreasonable risks created by dangerous conditions existing on their property."[22] The parties disagree on whether Mickelsen has alleged facts amounting to the existence of a "dangerous condition" on Wendy's property within the meaning of that rule. Wendy's argues that no duty exists because this case is controlled by *Schumacher v. City & Borough of Yakutat,*[23] which held that "the definition of 'conditions' that landowners may be required to protect against does not include the conduct of third parties."[24]

In *Schumacher*, a child was injured when he collided with a car while sledding down a

---

in deciding whether a negligence action can be maintained." (quoting *Kooly v. State*, 958 P.2d 1106, 1108 (Alaska 1998))).

**15.** Determining whether a legal duty exists is a question of law for determination by the court. *See supra* note 6 and accompanying text.

**16.** *P.G. v. State, Dep't of Health & Human Servs., Div. of Family & Youth Servs.*, 4 P.3d 326, 331 (Alaska 2000) (quoting *M.A. v. United States*, 951 P.2d 851, 854 n. 6 (Alaska 1998)).

**17.** *Wongittilin v. State*, 36 P.3d 678, 681 (Alaska 2001); *see also Dore*, 31 P.3d at 792–93 (determining existence of statutory duty before looking to public policy).

**18.** *Wongittilin*, 36 P.3d at 681.

**19.** *Id.* (citing *D.S.W v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981)); *see also Dore*, 31 P.3d at 793 ("If no existing case

law covers this class, we then weigh the factors that support and oppose the imposition of liability.").

**20.** *Schumacher v. City & Borough of Yakutat*, 946 P.2d 1255 (Alaska 1997).

**21.** *R.E. v. State*, 878 P.2d 1341 (Alaska 1994).

**22.** *Burnett v. Covell*, 191 P.3d 985, 989 (Alaska 2008); *see also Webb v. City & Borough of Sitka*, 561 P.2d 731, 733 (Alaska 1977), *superseded on other grounds by statute*, AS 09.65.200, *as recognized in Univ. of Alaska v. Shanti*, 835 P.2d 1225, 1228 n. 5 (Alaska 1992) (discussing AS 09.45.795, subsequently renumbered AS 09.65.200).

**23.** 946 P.2d 1255.

**24.** *Id.* at 1258.

city-owned road.[25] The city was aware that children frequently sledded on the road and had taken no steps to reduce the danger.[26] After weighing the public policy considerations, we held that the city "did not have a duty to protect [the child] from obvious risks created by his own conduct."[27] We explained:

> In essence, Schumacher is arguing that this court should impose liability on anyone who is aware of another's *self-destructive behavior*, has any ability to prevent that behavior, and fails to save the injured party from his or her own conduct. Such a holding would transform the law of negligence from a means whereby a person may recover for losses caused by a danger which another's unreasonable behavior created, to a mechanism permitting persons injured by their own conduct to compel any who failed to prevent that conduct to share the burdens of their negligence. We decline to permit such a result.[28]

We also noted that "other courts have expressly excluded third party activity" from the definition of the " 'conditions' that landowners may be required to protect against."[29]

*Schumacher* is distinguishable from the present case. The individual who caused the injury to the child in *Schumacher* was the child himself. In the present case, Mickelsen does not allege that Wendy's should be held liable for failing to protect Mickelsen from his own dangerous actions. Nor does Mickelsen's complaint, as we interpreted it in the previous section, allege that Wendy's should be held liable for failing to protect Mickelsen

from the dangerous actions of a third party. Rather, Mickelsen's complaint alleges that Wendy's should be held liable for its own actions in creating a dangerous condition on its land. We held in *Schumacher* that the city was not liable for failing to protect the child from his own dangerous activity.[30] This holding does not imply that a landowner is categorically immune from liability for harm caused by a dangerous condition it has created merely because the dangerous condition also requires the participation of a third party.

It is also relevant that the city in *Schumacher* was not in the business of providing safe sledding on its streets. Wendy's is in the business of providing an entry and exit to its customers. Holding that a business has a duty to conduct one of its core operations in a safe manner does not involve the transformation of the law of negligence that would have resulted had we held, in *Schumacher*, that the city had a duty to protect all who entered its land from harming themselves through self-destructive behavior.

We thus conclude that the current case is not controlled by the *Schumacher* line of cases.

Next, Wendy's argues that this case falls into the *R.E.*[31] class of cases, in which we have applied Restatement (Second) of Torts sections 314 through 320 to determine whether the defendant had a duty to protect the plaintiff from a third party's dangerous conduct.[32] Section 314 contains the traditional common-law rule that there is no general

25. *Id.* at 1256.

26. *Id.*

27. *Id.* at 1257.

28. *Id.* (emphasis in original).

29. *Id.* at 1258 (citing *Rombalski v. City of Laguna Beach*, 213 Cal.App.3d 842, 261 Cal.Rptr. 820, 824 (1989) (holding that rock was not "dangerous condition" injuring one who dove from it, since rock only became dangerous as result of plaintiff's misuse of it); 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 284 (1988) (" 'Dangerous condition' refers to the physical condition of the property itself, not to

activities on the property, and does not generally encompass the wrongful, criminal, or negligent conduct of third persons.")). In *Kooly v. State*, 958 P.2d 1106 (Alaska 1998), we followed *Schumacher* in finding that the landowner did not owe a sledding child a duty of care. The facts and analysis in *Kooly* are very similar to those in *Schumacher*.

30. *Schumacher*, 946 P.2d at 1257.

31. *R.E. v. State*, 878 P.2d 1341 (Alaska 1994). This class of cases also includes *State v. Sandsness*, 72 P.3d 299 (Alaska 2003), and *Dore v. City of Fairbanks*, 31 P.3d 788 (Alaska 2001).

32. *R.E.*, 878 P.2d at 1348; *see also Sandsness*, 72 P.3d at 301; *Dore*, 31 P.3d at 793.

duty to safeguard others from foreseeable harm when that would require controlling the conduct of another person or warning of such conduct.[33] Section 315 provides that there is "no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless ... a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." Wendy's argues that under these standards, it had no duty to control the conduct of drivers on the road adjacent to its property, even if it was foreseeable to Wendy's that a driver like Hayward posed a risk of physical harm to a passing motorist like Mickelsen.

Mickelsen responds that the current case does not belong to the *R.E.* class of cases because of the marked differences between those cases and this one. In each of the *R.E.* cases, the defendant was a government entity and the dangerous third party conduct at issue was intentional criminal behavior.[34] Here, the defendant is a commercial property owner and the dangerous third party conduct was the negligent driving of the defendant's third-party customer. We agree with Mickelsen that the current case does not belong to the *R.E.* class of cases. Although we decided that the Restatement sections stated the optimal rule of law in the class of cases involving the government's duty to protect potential victims from the criminal conduct of third parties, it does not follow that we have adopted the sections wholesale or without regard to context. We have said that "the process of finding that a defendant owes a duty to a plaintiff is one which involves a fine balancing of conflicting policies;

it is in essence an attempt to determine whether it would be fair and equitable to require an individual to act ... in a specified manner so as to avoid undue risk of harm to third persons." [35] Because the current case presents a significantly different set of "conflicting policies" and other considerations, we conclude that the current case is not controlled by the *R.E.* class of cases.

### 2. This case is controlled by our precedent in *Webb*.

■ Mickelsen's appeal primarily relies on the Restatement (Second) of Torts section 364 as establishing Wendy's duty of care. We have not previously recognized the section 364 standard as controlling and no Alaska case has previously cited it. It is unnecessary for us to adopt the Restatement in this case because our decision in *Webb v. City & Borough of Sitka* [36] provides controlling precedent. Where existing Alaska case law provides adequate grounds for deciding an issue, judicial economy argues in favor of relying on those grounds rather than adopting a new rule in order to reach the same result.

*Webb* established that "[a] landowner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all of the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk." [37]

According to Mickelsen's complaint, "[t]he use of the 5th Avenue exit as a short-cut entry ... is a[n] ... artificial condition that

33. *R.E.*, 878 P.2d at 1348 (citing Restatement (Second) of Torts § 314 ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.")).

34. *Sandsness*, 72 P.3d at 300 (suit against state agency for failing to protect man killed by prisoner on early release); *Dore*, 31 P.3d at 789 (suit against police department for failing to protect woman killed by man for whom arrest warrant was outstanding); *R.E.*, 878 P.2d at 1342 (suit against state agency for failing to protect child from sexual abuse in state licensed daycare facility).

35. *Busby v. Municipality of Anchorage*, 741 P.2d 230, 232–33 (Alaska 1987).

36. 561 P.2d 731 (Alaska 1977), *superseded on other grounds by statute*, AS 09.65.200, *as recognized in Univ. of Alaska v. Shanti*, 835 P.2d 1225, 1228 n. 5 (Alaska 1992) (discussing AS 09.45.795, subsequently renumbered as AS 09.65.200).

37. *Id.* at 733; *see also Burnett v. Covell*, 191 P.3d 985, 990 (Alaska 2008) (presenting *Webb* as first articulation of these "ordinary principles of negligence" governing conduct of landowners).

posed an unreasonable risk of harm to westbound traffic on 5th Avenue," and Wendy's failed "to take action to make this dangerous condition safe." As a result of Wendy's alleged creation of this short-cut entry route and its alleged failure to take reasonable steps to prevent the use of that route, Wendy's customers regularly drove across two lanes of oncoming traffic in order to reach the restaurant. In terms of the *Webb* factors, the alleged dangerous condition was likely to result in traffic accidents and resulting injury; a collision between a customer's vehicle and oncoming traffic was likely to be gravely serious; and Wendy's was in a much stronger position to bear the burden of avoiding the risk than drivers in the westbound lanes such as Mickelsen. Such drivers were effectively powerless to prevent third parties such as Hayward from taking the short-cut. Wendy's, if nothing else, might have altered the design of the Fifth Avenue exit or posted more effective warnings. Whether Wendy's failure to take such steps was unreasonable, and whether it breached its duty, are not questions before us at this stage of the case.

 In sum, Wendy's had a duty under *Webb* to maintain its property in a reasonably safe manner in view of all relevant circumstances. This duty applied to those entering and exiting Wendy's and to those who might be affected by those entering and

exiting Wendy's, pedestrian or otherwise.[38] It may yet be proper for the superior court to dismiss Mickelsen's claim on summary judgment, or it may be that the case must go to trial. But Mickelsen's claim cannot be dismissed as a matter of law based on Wendy's owing no duty of care to passing motorists allegedly endangered by the artificial conditions on Wendy's property.[39]

Finally, having concluded that *Webb* provides controlling precedent in the present case, it is unnecessary for us to determine whether the public policy factors enumerated in *D.S.W. v. Fairbanks North Star Borough School District*[40] support the imposition of a duty of care.

## V. CONCLUSION

Because, read liberally, the allegations of the complaint state a cause of action, we REVERSE the superior court's order of dismissal and REMAND for further proceedings consistent with this opinion.

CHRISTEN, Justice, not participating.

STOWERS, Justice, dissenting.

STOWERS, Justice, dissenting.

I disagree with the court's opinion. I would affirm the superior court's dismissal in favor of Wendy's. I do not believe that

---

**38.** The dissent asserts that Mickelsen had "no connection to Wendy's (that is, he was not a customer of Wendy's but merely an innocent person driving past the restaurant on a public highway when another person made an illegal turn in front of him ...)," but this formulation minimizes the connection between Wendy's and Mickelsen. Mickelsen was on a roadway immediately adjacent to Wendy's property and was killed when a customer of Wendy's collided with him allegedly as a result of Wendy's defectively designed improvements.

Other courts have reached similar conclusions in cases involving exit driveways used as business entrances without adequate safeguards or warnings. In *Boudreaux v. Sonic Indus., Inc.*, 729 P.2d 514 (Okla.App.1986), the court held that a drive-in restaurant owner owed a duty to its customers to create a reasonably safe entrance and exit and that this duty extended to members of the public traveling the highway: "If Sonic owes a duty to [a customer] to refrain from creating a hazardous exit, then that duty extends to a motorist placed in jeopardy by any breach of

that duty." *Id.* at 517. In *Lutheran Hosp. of Ind. v. Blaser*, 634 N.E.2d 864, 870 (Ind.App. 1994), the court concluded that because a business "knew the manner in which its invitees, both pedestrians, and drivers, customarily used the driveway of the 'exit', ... it [was] under a duty to correct the dangerous conditions and guard against foreseeable injuries."

**39.** The dissent speculates about how this case will proceed in the future—hypothesizing that a third-party complaint will be filed, that at trial fault will be apportioned to the third-party defendant, that Mickelsen's estate will recover nothing but will be liable for costs and fees, and that "[a]ll the court's ruling will accomplish is to increase unnecessary costs on society"—but it is only speculation. Today's opinion does nothing more than re-affirm longstanding Alaska law that a landowner has a duty "to maintain its property in a reasonably safe manner in view of all relevant circumstances."

**40.** 628 P.2d 554, 555 (Alaska 1981).

Wendy's duty extends to Mickelsen, an innocent person with no connection to Wendy's (that is, he was not a customer of Wendy's but merely an innocent person driving past the restaurant on a public highway when another person made an illegal turn in front of him, causing the collision and his death). I also think that Wendy's has no duty to prevent a person from making an illegal turn in his wrongful attempt to shortcut into Wendy's parking lot. To extend a business's duty to the circumstances of this case will vastly expand the potential liability and attendant costs to businesses all over Alaska. This places an intolerable burden not only on those businesses, but on society at large, because the costs of this greatly expanded liability will surely be passed down to the people in the form of higher costs for goods and services, higher insurance costs, and increased litigation.[1]

I also believe that our current framework for a landowner's duty is adequately set out in *Schumacher v. City & Borough of Yakutat,* where we stated:

> In essence, Schumacher is arguing that this court should impose liability on anyone who is aware of another's self-destructive behavior, has any ability to prevent that behavior, and fails to save the injured party from his or her own conduct. Such a holding would transform the law of negligence from a means whereby a person may recover for losses caused by the danger which another's unreasonable behavior created, to a mechanism permitting persons injured by their own conduct to compel any who failed to prevent that conduct to share in the burden of their negligence. We decline to permit such a result.[2]

Of course, *Schumacher* is distinguishable in that, in *Schumacher,* it was the negligent child who caused the injury to himself, not a third-party scofflaw. But the underlying principle remains the same—the court should not impose liability on the owner of property where the property owner fails to prevent the unlawful behavior of a third party, whose unlawful behavior occurs off the premises, and causes injury off the premises. The court's holding today transforms the law of negligence into a mechanism permitting a party injured by a third party's illegal and negligent conduct to compel an adjacent property owner who failed to prevent the illegal conduct to share in the burden of the scofflaw's illegal conduct.

1. Such litigation would also likely be hugely wasteful. Now that the case is remanded for further proceedings, I assume that the first thing Wendy's will do is file a third-party complaint for apportionment of fault against Hayward, the driver who made the illegal turn and caused the collision. At trial, the jury will be asked to apportion fault, and it is entirely foreseeable that fault will be apportioned wholly or in very large percentage to Hayward. Businesses like Wendy's will bear the costs of litigating cases like this one, but there will be little likelihood of compensation for those who are injured or killed by the illegal acts of people like Hayward, the scofflaw driver in this case. Thus, the court's ruling will not advance the interests of injured innocents (if anything, if my prognostication is accurate, the innocent plaintiff will likely end up not only not receiving compensation from Wendy's, but will owe Wendy's its costs and attorney's fees if Wendy's prevails on its apportionment of fault defense). All the court's ruling will accomplish is to increase unnecessary costs on society.

2. 946 P.2d 1255, 1257 (Alaska 1997) (emphasis deleted).