*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MICHAEL CAREY-THOMANN, ) | |
| ) | Supreme Court No. S-19081 |
| Appellant, ) | |
| ) | Superior Court No. 4FA-22-01389 CI |
| v. ) | |
| ) | O P I N I O N |
| UNIVERSITY OF ALASKA ) | |
| FAIRBANKS and BOARD OF ) | No. 7809 – May 1, 2026 |
| REGENTS, ) | |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Brent E. Bennett, Judge.

Appearances:  Sandra K. Rolfe and Mike A. Stepovich, Fairbanks, for Appellant.  Kristin E. Crabb, Guess & Rudd P.C., Anchorage, for Appellees.

Before:  Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

HENDERSON, Justice.

## I.    INTRODUCTION

A blind student fell off the balcony of a building on his university campus when he mistook a guardrail for a bench and climbed over it.  He sued the university for negligence.  The superior court granted summary judgment to the university, finding that it owed no duty to the student that could sustain a negligence claim.  The student

appeals. Because our precedent establishes that a defendant has no duty to protect a plaintiff from risks created by his own conduct, we affirm the grant of summary judgment to the university.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Background

Michael Carey-Thomann has been blind since he was a child. He was a student at University of Alaska Fairbanks (UAF) and began living on campus around 2017. When navigating around campus he would follow set paths to avoid getting lost. He would sometimes climb over metal benches when walking around campus.

At some point during his time as a student, a UAF representative showed Carey-Thomann around parts of the UAF campus, though they did not visit every area of campus. Carey-Thomann recalled that the representative "did not show . . . or explain . . . the areas that [he] should stay away from or that were unsafe areas for someone who is blind." The representative showed Carey-Thomann the interior of the student union building, known as the Wood Center, and described the lower-level courtyard outside that building, but did not inform Carey-Thomann that the Wood Center had a second-story balcony protected by a guardrail.

#### 2. The accident

In March 2020, UAF granted Carey-Thomann special permission to remain living in his UAF dormitory during an emergency closure due to the COVID-19 pandemic.

Later that month, Carey-Thomann attempted to get dinner at the convenience store in his dorm complex, but it was closed. He proceeded to the north entrance of the Wood Center to get dinner at the dining area there, but found the doors were locked. A fellow student helped Carey-Thomann walk downstairs to a lower entry to the Wood Center, which was open. Carey-Thomann was unfamiliar with the lower entry, which was not part of one of his established routes. The student who showed

him the entry did not describe the path they were taking, and because Carey-Thomann was socializing with the other student, he was not attempting to remember the path they took.

The next day, after finding that the convenience store in his dorm was still closed, Carey-Thomann returned to the same north-facing doors at the Wood Center for dinner. The doors were again locked. Carey-Thomann attempted to retrace the path to the lower doors that the other student had shown him the previous day, staying as close as possible to the structure. He found another set of doors, but they were locked and he could find no signs in braille that he could read. Carey-Thomann continued walking and ended up on a trail leading him away from the building. He attempted to return to the building, but his mobility cane made contact with a solid object that sounded like it was made of metal. He stated that he could "feel ground continue beyond it," though the recording of the incident does not show that he used his cane to probe the ground on the other side. He concluded that it was a bike rack or a bench.

Carey-Thomann did not realize that the object was actually a guardrail with an at least ten-foot drop behind it. Intending to make his way back to the Wood Center to continue searching for the doors, Carey-Thomann climbed over the guardrail. He turned around to grab it and fell backwards over the edge of the balcony, landing on his back. He attempted to stand up but was in excruciating pain. Less than a minute later another student found him and called an ambulance.

### B. Proceedings

#### 1. Complaint and motion work

Carey-Thomann filed a complaint against UAF and its Board of Regents, alleging negligence, recklessness and negligence per se. He alleged that UAF had a "duty to maintain a safe environment for all students, visitors, and faculty, regardless of physical ability and/or impairment," and that UAF violated that duty by "failing to

provide a safe environment for visually impaired students."[1]  He stated that UAF's breach of duty was the proximate cause of his accident and resulting injuries.

UAF moved for summary judgment, arguing that UAF did not have a duty to protect Carey-Thomann from "risks created by his own conduct."  Carey-Thomann opposed, arguing that UAF owed him a statutory duty of care under the Alaska Human Rights Act (AHRA) and the Americans with Disabilities Act (ADA).  He also argued that even if UAF had no duty under statute, this court's holding in *D.S.W. v. Fairbanks North Star Borough School District* — which outlines factors to consider when determining whether a duty can be found in the absence of applicable statutes or caselaw[2] — supported finding a duty in this case.  He asserted that summary judgment was inappropriate because there were questions of fact as to foreseeability and whether UAF breached its duty.

### 2.    Superior court order granting summary judgment to UAF

The superior court granted summary judgment to UAF.  It explained that whether a duty exists is a question of law that requires the court to look first to statute and then to existing precedent.  If neither statute nor caselaw provides a clear answer, the court evaluates whether public policy imposes a duty using the *D.S.W.* factors.[3]

---

[1]    Carey-Thomann also argued that UAF breached a duty to "inform him of facility closures," but he does not raise that argument on appeal.

[2]    628 P.2d 554, 555 (Alaska 1981).  These factors are the following:  the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the connection between the defendant's conduct and the plaintiff's injury, the moral blame assignable to the defendant, the policy of preventing future harm, the extent of the burden on the defendant and the consequences to the community of imposing a duty, and the availability, cost, and prevalence of insurance for the applicable risk.  *Id.*

[3]    *See Est. of Mickelsen ex rel. Mickelsen v. North-Wend Foods, Inc.*, 274 P.3d 1193, 1199 (Alaska 2012) (explaining three-step process to determine whether duty of care exists).

Following those steps, the court first found that neither the AHRA nor the ADA established that UAF owed Carey-Thomann a duty of care. It reasoned that both statutes are intended to protect against discrimination, not to protect against physical injury.

It next determined that Alaska case law establishes that a defendant has "no duty to protect [a plaintiff] from his own unreasonable behavior"[4] and "no duty to warn of open or obvious conditions of which a plaintiff is or should be aware."[5] The court reasoned that Carey-Thomann was injured because he "chose to jump off of a guardrail without first using his cane to determine how far he would be leaping to the ground below," rather than because of any inherently dangerous condition under UAF's control. It concluded that because UAF owed Carey-Thomann no duty to protect him from climbing over the guardrail and because Carey-Thomann had "failed to produce any admissible evidence" to the contrary, summary judgment was appropriate.[6]

In addition to concluding that UAF owed no duty to Carey-Thomann, the superior court also determined that summary judgment was appropriate because Carey-Thomann had waived the issue of proximate cause by failing to argue it in his opposition to summary judgment.[7] It further concluded that summary judgment was

---

[4] *See Schumacher v. City & Borough of Yakutat*, 946 P.2d 1255, 1257 (Alaska 1997) (defendant's duty did not extend to "dangers created by [plaintiff's] own conduct").

[5] *See McGlothlin v. Mun. of Anchorage*, 991 P.2d 1273, 1279 & n.23 (Alaska 1999) (defendant "had no duty to warn [plaintiff] of an open and obvious condition").

[6] Because the court concluded that Alaska case law establishes UAF had no duty to Carey-Thomann, it declined to analyze whether public policy imposed a duty under the *D.S.W.* factors.

[7] Carey-Thomann does not address this issue on appeal. Because we affirm the superior court's grant of summary judgment on the ground of duty, we do not address whether Carey-Thomann's failure to argue proximate cause in his opposition to summary judgment constituted waiver.

appropriate for the claims against the Board of Regents for the independent reason that Carey-Thomann had failed to make any specific allegations about the Board.[8] It granted UAF's motion for summary judgment and dismissed the case with prejudice.

Carey-Thomann appeals.

## III.   STANDARD OF REVIEW

We review a grant of summary judgment de novo, affirming only if "there are no genuine disputes of material fact and if the moving party is entitled to judgment as a matter of law."[9] The party moving for summary judgment bears the initial burden of proving "(1) the absence of genuine fact disputes, and (2) its entitlement to judgment as a matter of law" by means of admissible evidence.[10] If the movant makes a prima facie case, the burden then shifts to the nonmovant "to set forth specific facts showing that [it] could produce admissible evidence reasonably tending to dispute or contradict the movant's evidence, and thus demonstrate that a material issue of fact exists."[11] The nonmovant's evidence must not be too conclusory, speculative, or incredible to be believed, and must "directly contradict" the evidence of the moving party.[12]

"The existence and extent of a duty of care are questions of law which we decide de novo, using our independent judgment to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[13]

---

[8]    Carey-Thomann does not appeal this point, and appears to have conceded it at oral argument.

[9]    *Guerra v. Wallace*, 542 P.3d 654, 658 (Alaska 2024).

[10]    *Id.* (quoting *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 447-48 (Alaska 2002)) (internal quotation marks omitted).

[11]    *Id.* at 658-59 (alteration in original) (quoting *Alakayak*, 48 P.3d at 448).

[12]    *Id.* at 659 (quoting *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014)).

[13]    *Est. of Mickelsen ex rel. Mickelsen v. North-Wend Foods, Inc.*, 274 P.3d 1193, 1197 (Alaska 2012) (citing *State v. Sandsness*, 72 P.3d 299, 301 (Alaska 2003)).

## IV.    DISCUSSION

In order to be liable for negligence, UAF "must have owed and breached a duty to protect [Carey-Thomann] from the harm he suffered."[14]  "We use a three-step process to determine whether a duty of care exists."[15]  First, we ask whether there is a duty imposed by statute.[16]  If no statute applies, we "determine if the current case falls in the class of cases controlled by existing precedent."[17]  If there is no closely related case law, we weigh the public policy factors laid out in *D.S.W.*[18]

### A.    Neither The ADA Nor The AHRA Imposes An Applicable Statutory Duty Of Care.

Carey-Thomann argues that the ADA and the AHRA establish that UAF had a duty of care in this case.  He argues that because visual impairment is a disability protected by both statutes, UAF had a duty to protect him from injury.

We conclude that neither the ADA nor the AHRA imposes an applicable standard of care in this context.  A statute only imposes a tort duty of care when it "prescribes specific conduct rather than merely a general or abstract duty of care."[19]

---

[14]    *Schumacher v. City & Borough of Yakutat*, 946 P.2d 1255, 1257 (Alaska 1997).

[15]    *Mickelsen*, 274 P.3d at 1199.

[16]    *Id.*

[17]    *Id.*

[18]    *Id.* (citing *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981)).

[19]    *Busby v. Mun. of Anchorage*, 741 P.2d 230, 233 (Alaska 1987) ("A statute enunciates the appropriate duty when it is found that (1) the plaintiff is within the class protected by the statute, (2) the harm/injury which occurred was of the type which the statute was intended to protect against, (3) the statute prescribes specific conduct rather than merely a general or abstract duty of care, (4) the defendant was a party charged with observing the statute, (5) the defendant can be fairly charged with being aware of the applicability of the statute, and (6) the statute is not so outdated or arbitrary as to make inequitable the statute's adoption as the standard of care.").

While both statutes do protect individuals with visual impairments,[20] neither mandates specific conduct relating to prevention of physical injury. The ADA is a federal statute that generally prohibits discrimination on the basis of disability in employment, public services, and public accommodations.[21] It does not set out safety standards for the elimination of physical hazards. And the AHRA is a state statute that similarly imposes broad prohibitions on discrimination on the basis of protected statuses in the areas of employment, public accommodations, and the sale and rental of real property.[22] Such "general or abstract" mandates do not articulate a negligence standard of care.[23]

A statute also provides the appropriate standard of care only where the injury which occurred was the type of injury the statute was intended to protect against.[24] Carey-Thomann's injury is not the type of harm either statute is specifically "intended to protect against";[25] both statutes are aimed at preventing discrimination.[26]

---

[20]    *See* 42 U.S.C. § 12102(1)(A) (defining "disability" under the ADA as "a physical or mental impairment that substantially limits one or more major life activities"); AS 18.80.300(14)(A) (applying same definition of "disability" under AHRA).

[21]    *See* 42 § U.S.C. 12101 ("It is the purpose of this chapter . . . to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities . . . ."); *see also* 42 U.S.C. §§ 12102-12213.

[22]    *See* AS 18.80.230 (outlining unlawful practices in places of public accommodation, including denial of services, goods, facilities, advantages, or privileges on basis of protected status such as disability); *see also* AS 18.80.200-.255.

[23]    *See Busby*, 741 P.2d at 233.

[24]    *Id.*

[25]    *Id.*

[26]    *See* 42 U.S.C. § 12101(b)(2) (declaring purpose of ADA is "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities"); AS 18.80.200(b) (declaring purpose of AHRA is "to eliminate and prevent discrimination in employment . . . places of public accommodation, [and] in the sale, lease or rental of real property because

Reduction of physical harm may be a byproduct of both, but they do not "enunciate [a] . . . duty" that can form the basis of a negligence action.[27]  Neither the ADA nor the AHRA establishes an applicable duty here.

**B.      This Case Falls Under Existing Precedent Establishing That A Defendant Has No Duty To Prevent An Individual From Voluntarily Undertaking A Dangerous Action.**

UAF argues that this case is controlled by *Schumacher v. City & Borough of Yakutat*,[28] and thus that no relevant duty exists.  Carey-Thomann argues that this case is distinct from *Schumacher* and does not fall into any line of existing precedent, and urges us to analyze whether the factors we articulated in *D.S.W. v. Fairbanks North Star Borough School District*[29] support finding a duty.  Because we agree with UAF that this case is controlled by our precedent in *Schumacher*, we need not conduct a *D.S.W.* analysis.[30]

In *Schumacher*, a twelve-year-old was seriously injured when he sledded down a city-owned road and was struck by a car.[31]  The city was aware that children

---

of . . . physical or mental disability" and to "encourage and enable physically and mentally disabled persons to participate fully in the social and economic life of the state and to engage in remunerative employment"); *see also Hunter on behalf of A.H. v. Dist. of Columbia*, 64 F. Supp. 3d 158, 189 (D.D.C. 2014) ("Multiple courts have found that the ADA is not a public safety statute for purposes of . . . negligence per se . . . .").

[27]      *Cf. Busby*, 741 P.2d at 233-34 (finding statute articulated duty of care for officer to take intoxicated individual into protective custody where it "explicitly state[d]" it was "intended to benefit and protect the health and well being of persons who are incapacitated by alcohol and imposes a mandatory duty upon law enforcement personnel" to place them in custody).

[28]      946 P.2d 1255 (Alaska 1997).

[29]      628 P.2d 554, 555 (Alaska 1981).

[30]      *See Est. of Mickelsen ex rel. Mickelsen v. North-Wend Foods, Inc.*, 274 P.3d 1193, 1199 (Alaska 2012) ("If no closely related case law exists, we weigh the public policy considerations enumerated in *D.S.W.* . . . .").

[31]      *Schumacher*, 946 P.2d at 1256.

frequently sledded on the road but took no steps to reduce the danger.[32]  We held that the city had no duty to protect the child "from obvious risks created by his own conduct."[33]

This case is squarely controlled by our holding in *Schumacher*.  Like the child's collision with the car, Carey-Thomann's fall from the balcony was caused not by an "inherently dangerous property condition,"[34] but by Carey-Thomann's volitional conduct when he climbed over the guardrail.  Carey-Thomann acknowledges that the guardrail had "no noticeable defects," and he introduced no facts before the superior court to contradict a campus police report indicating that the guardrail was "in good working order, and was clearly put there to prevent access off the ledge of the Wood Center."  Carey-Thomann was injured not due to "unreasonable risks created by dangerous conditions existing on" UAF property, but "by risks that his own conduct generated."[35]

The fact that Carey-Thomann believed the guardrail to be a bike rack or a bench when he chose to climb over it does not meaningfully distinguish this case from *Schumacher*.  The child in *Schumacher* had been warned by his father not to sled in the road, so he knew the extent of the risk he took.[36]  But our holding that the city had no duty rested not on the child's assumption of risk, but rather on the principle that holding the city liable for a failure to "save the injured party from *his or her own conduct*"[37]

---

[32]    *See id.*

[33]    *Id.* at 1257.

[34]    *Id.* at 1258 (acknowledging that "[a]s a general rule, landowners have a duty to use due care to guard against unreasonable risks created by dangerous conditions existing on their property" (footnote omitted)).

[35]    *Id.*

[36]    *Id.* at 1256, 1258 n.8.

[37]    *Id.* at 1257 (emphasis added).

would cut against the essential function of negligence law — which is to allow a person to "recover for losses caused by a danger which *another's* unreasonable behavior created."[38]  Carey-Thomann may not have known the object was a guardrail, but he chose to climb over the object without first attempting to walk around it or probe the other side with his mobility cane to confirm what it was or what lay beyond it.  The guardrail "became a danger" to Carey-Thomann "as a result of his own misuse of it," not because it was inherently unsafe.[39]  Under *Schumacher*, UAF had no duty to protect him from the "obvious risks created by his own conduct."[40]

Carey-Thomann argues that this case is distinct from *Schumacher* because UAF assumed the duty to protect Carey-Thomann when it agreed to allow him to live on campus.  He also argues that a university has "a special relationship with" and "a duty to prevent harm to its students."  But even assuming without deciding that UAF did owe Carey-Thomann some sort of affirmative duty based on their relationship,[41]

---

[38]    *Id.* (emphasis added).

[39]    *See id.* at 1258.

[40]    *See id.* at 1257; *see also Kooly v. State¸* 958 P.2d 1106, 1109 (Alaska 1998) (concluding that state had no duty of care to prevent fatal sledding accident where plaintiff's injury was "more closely connected with the conduct of those other than [the defendant]").

[41]    It is not at all clear that UAF assumed a duty to protect Carey-Thomann from physical injury by allowing him to live on campus.  While we have held that duties may be voluntarily assumed, the scope of an assumed duty is limited by the underlying act.  *See Kay v. Danbar, Inc.*, 132 P.3d 262, 270, 272 (Alaska 2006) (property manager may have assumed, through rental agreement and affirmative actions, limited duty to inspect premises and warn tenant about non-obvious dangers); *Adams v. State*, 555 P.2d 235, 240 (Alaska 1976) (state fire officials assumed duty to mitigate known fire hazards by conducting fire hazard inspection).  It is also not clear that UAF had a special affirmative duty to Carey-Thomann based on the university-student relationship.  We have never held that a university takes on a special duty to protect students from harm, and outside Alaska "[c]ourts are split on whether a college owes an affirmative duty to its students."  RESTATEMENT (THIRD) OF TORTS § 40 cmt. l (A.L.I. 2012) (discussing

*Schumacher* would still control here. Whatever duty UAF might have assumed to Carey-Thomann would not extend to protecting him from an obvious danger that was fundamentally created by Carey-Thomann's own actions.[42] To hold otherwise would risk "transform[ing] the law of negligence . . . to a mechanism permitting persons injured by their own conduct to compel any who failed to prevent that conduct to share the burdens of their negligence."[43] As in *Schumacher*, "[w]e decline to permit such a result."[44]

Relatedly, while we decline to conduct a full *D.S.W.* analysis here, we note that the two most important *D.S.W.* factors weigh heavily against finding a duty in this case.[45] First, we note that UAF had no reason to foresee that any student — or Carey-Thomann in particular — would be likely to climb over a functional guardrail without first finding out what it was.[46] Second, we observe that finding a duty here would impose a substantial burden on UAF and the broader community.[47] If UAF had a duty to warn Carey-Thomann about the existence of a functional, ordinary guardrail, such a duty might extend to anything on campus that could conceivably cause any students injury if they failed to use due care. That result would risk "open[ing] the

---

duty of universities and collecting cases). We need not address these issues here, however, as they do not disrupt the applicability of *Schumacher*.

[42]   *See Schumacher*, 946 P.2d at 1257.

[43]   *See id.*

[44]   *See id.*

[45]   *See D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981).

[46]   *Tripp v. City & Borough of Juneau*, 563 P.3d 17, 30 (Alaska 2025) ("The single most important criterion in determining whether to impose a duty of care upon a particular defendant is foreseeability.").

[47]   *Hurn v. Greenway*, 293 P.3d 480, 487 (Alaska 2013) (stating that after foreseeability, second most important *D.S.W.* factor is burden of imposing duty of care on defendant and consequences to community).

judicial floodgates" with regard to negligence claims.[48]   For the aforementioned reasons, we conclude that UAF owed no duty to protect Carey-Thomann from climbing over the guardrail.

## V.   CONCLUSION

The superior court's grant of summary judgment is AFFIRMED.

---

[48]   *See Schack v. Schack*, 414 P.3d 639, 645 (Alaska 2018) (quoting *Hawks v. State, Dep't of Pub. Safety*, 908 P.2d 1013, 1017 (Alaska 1995)) [(noting our reluctance to impose "new [negligent infliction of emotional distress] liability" based on burden to defendant and consequences to community)]; *see also Kooly v. State*, 958 P.2d 1106, 1109 (Alaska 1998) ("[I]t is not possible to make the thousands of miles of state rights-of-way adjacent to highways safe for sledding.  Any effort to do so would be both expensive and futile.").