*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| COURTNEY GUERRA, as Personal Representative of the ESTATE OF JAMES FRANCIS GOARD, <br><br> Appellant, <br><br> v. <br><br> JOHN WALLACE and ROBERT NESBITT, <br><br> Appellees. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Supreme Court No. S-18317

Superior Court No. 4FA-19-02367 CI

O P I N I O N

No. 7683 – February 2, 2024

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Todd Young, Todd Young Law Firm, Anchorage, for Appellant. Laura L. Farley and Tracy Hillhouse Price, Farley & Graves, P.C., Anchorage, for Appellee John Wallace. No appearance by Appellee Robert Nesbitt.

Before: Maassen, Chief Justice, and Borghesan, Henderson, and Pate, Justices. [Carney, Justice, not participating.]

BORGHESAN, Justice.

# I.     INTRODUCTION

The estate of a deceased Fairbanks entrepreneur languished in probate for years. The value of its assets, already encumbered by tax liens and creditors' claims,

eroded. Eventually the personal representative of the estate was replaced, and the deceased man's wife and sole beneficiary of his estate became the personal representative. Under her direction, the estate then sued the former personal representative for breach of fiduciary duty and conversion. The estate also sued the lawyer who represented the former personal representative, asserting claims of malpractice and negligence.

The lawyer moved for summary judgment, arguing that because his only client was the former personal representative, the lawyer had no liability for harms to others. The lawyer argued that he was not liable for malpractice to the deceased man's wife because there was no privity of contract between them. Acknowledging that in some cases a lawyer may owe a duty of care to a nonclient that can give rise to a negligence claim, the lawyer argued that he had no such duty in this case. The superior court granted summary judgment in favor of the lawyer. The estate appeals.

We affirm the superior court's judgment. The estate's opening brief failed to challenge the superior court's ruling on the malpractice claim, so the estate waived this issue. And the estate did not show there are disputed facts material to the question of the lawyer's duty of care to the deceased man's wife. Because she had a reasonable ability to protect her own rights against some of the former personal representative's alleged misdeeds, and because the former personal representative's lawyer did not know or have reason to know of the other alleged misdeeds, the lawyer did not owe a duty of care to the deceased man's wife.

## II. FACTS AND PROCEEDINGS

### A. Probate Proceedings

James Goard died on April 20, 2012. Goard's will left his entire estate to his surviving spouse, Theresa Hester.

Both Hester and Robert Nesbitt, who claimed to be one of Goard's creditors,[1] petitioned for appointment as personal representative. After a hearing at which Hester did not appear, the superior court appointed Nesbitt as personal representative. The superior court also issued an order enjoining the sale, transfer, or encumbrance of any estate property.

Nesbitt's time as personal representative was contentious. Hester petitioned several times to have Nesbitt removed.[2] In 2014 she petitioned to have him removed for various alleged failures, misdeeds, and conflicts. The matter was referred to a standing master. At an evidentiary hearing in March 2015, Nesbitt testified about the estate's financial issues. He explained that the estate owed $19,000 in taxes on one property (the "Elim property") and that taxes on a residential property known as "the Five-Plex" had not been paid in three years. Nesbitt testified that "there ha[d]n't been any money available" in the estate to pay the Elim property taxes and he had needed to borrow money to pay the taxes on the Five-Plex. Later in the hearing he reiterated that there was no money in the estate. After the hearing the standing master recommended that Hester's petition to remove Nesbitt be denied. The superior court adopted the recommendation.

Because the court had previously enjoined the sale of any estate property, Nesbitt petitioned the court to allow the sale of the Five-Plex and another real property owned by the estate (the "Showboat," a Fairbanks cabaret) in May 2015. The petition, which was served on Hester's attorney, stated that neither the Showboat nor the Five-Plex had liability insurance, that the Showboat was undergoing tax foreclosure, and that

---

[1] In July 2012 Nesbitt filed a $31,200 claim against the estate for live-in care he allegedly provided Goard at the end of his life. Hester disputed that Nesbitt provided any care for Goard.

[2] AS 13.16.295(b) ("Cause for removal exists when removal would be in the best interests of the estate, . . . or [the personal representative] has mismanaged the estate or failed to perform any duty pertaining to the office.").

the Five-Plex had frozen pipes because the heat and electric bills had not been paid. Nesbitt also explained that he had obtained an unsecured loan on the estate's behalf to avoid tax foreclosure on the Five-Plex, but the note had matured and was in default.

In June 2015 Nesbitt filed an accounting and proposed distribution, but the superior court rejected it and ordered Nesbitt to file an updated inventory and accounting. The court expressed frustration with Nesbitt's accounting, opined that the job was "way too much" for him, and stated that "someone needs to step forward." The court noted that Hester was "the only person before the court as an alternative" but was "not appropriate" because she had missed initial hearings and had no knowledge of what was going on. The court reiterated that it was willing to entertain a proposal for another person to take over the role of personal representative, stating that "someone needs to be in charge."

In October 2015 Nesbitt retained a new attorney, John Foster Wallace, to represent him in the estate proceedings. Wallace entered his first appearance on behalf of Nesbitt in November 2015. Wallace's retainer was paid by a business partner of Nesbitt's, William St. Pierre.

St. Pierre filed a $25,000 claim against the estate on November 27, 2015 for "money loaned to the estate to cover the costs of removing encroachments on federal land." Nesbitt allowed the claim.[3] Wallace later prepared an interim estate inventory filed with the court that categorized St. Pierre's claim as "[m]oney [o]wed [b]ut [n]ot [p]aid." The inventory contained the caveat that "[j]ust because a debt is listed does not mean that it has been accepted as valid."

---

[3]     Nesbitt's signature was dated "1-27-15." The superior court "assume[d] the '1-27-15' allowance date [was] a typographical error and that the claim was approved by Nesbitt the same day [St. Pierre's attorney] signed the claim": November 27, 2015.

The Showboat burned down around August 2017. It was uninsured at the time. The property had been insured when Nesbitt became personal representative, but Nesbitt cancelled the coverage, asserting that the estate lacked enough money to pay for it. At a later deposition Wallace testified that he had advised Nesbitt to insure the property.

At the beginning of 2017 the estate's bank account had $54,126 in it, but by the year's end it had only $206. In 2018 most of the estate's real property went into tax foreclosure, including the Showboat and the Five-Plex.

In August 2018 the superior court removed Nesbitt as the estate's personal representative. It appointed a special administrator in his place. Shortly after, Wallace moved for permission to withdraw as Nesbitt's counsel.

The newly appointed special administrator concluded that the estate was insolvent. He reported that the Showboat had been foreclosed upon by the Fairbanks North Star Borough and was likely to be sold at auction; that the Five-Plex had little value and was encumbered by a federal tax lien; that Nesbitt had made a series of withdrawals from the estate's bank account in 2017 that left the estate with no funds to pay an administrator; and that creditors were claiming almost $300,000 from the estate. The special administrator resigned in November 2018.

The superior court then appointed Hester as personal representative of the estate.

**B.     The Estate's Suit Against Nesbitt And Wallace**

With Hester acting as personal representative, Goard's estate sued both Nesbitt and Wallace in August 2019. The estate alleged that both Nesbitt and Wallace were liable for damages to the estate. The estate alleged that Wallace performed his duties as attorney for Nesbitt negligently and that he owed a duty not only to Nesbitt, but also to the beneficiaries of the estate. Wallace answered, denying liability.

Hester passed away a few months later, and her daughter, Courtney Guerra, was substituted as personal representative of the estate.

Wallace moved for summary judgment. He argued that the estate's claims were barred by a three-year statute of limitations. He also argued that as a matter of law he was not liable to the estate for malpractice or breach of fiduciary duty. The estate opposed summary judgment.

The superior court granted summary judgment in favor of Wallace. Citing our decision in *In re Estate of Johnson*,[4] the superior court reasoned that we had implicitly adopted a rule that beneficiaries of an estate cannot sue the personal representative's attorney for malpractice because there is no privity of contract that could be the basis for a malpractice claim. It therefore granted summary judgment to Wallace on the malpractice claim. The court then analyzed the estate's negligence claim under our decision in *Pederson v. Barnes*,[5] which described when an attorney owes a duty of care to a nonclient. The court concluded that the estate failed to show a dispute of material fact that would support the existence of a duty of care. Because the court granted summary judgment to Wallace on these grounds, it did not address his alternative statute of limitations argument.

The estate appeals.[6]

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[7] We will affirm a grant of summary judgment if there are no genuine disputes of material fact and if the moving party is entitled to judgment as a matter of law.[8] To determine if there is a genuine dispute of material fact, we look to the pleadings, depositions, answers to

---

[4] 119 P.3d 425 (Alaska 2005).

[5] 139 P.3d 552 (Alaska 2006).

[6] Nesbitt did not participate in this appeal.

[7] *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 447 (Alaska 2002).

[8] *Id.*

interrogatories, and admissions on file, together with the affidavits.[9] The material fact requirement has two important aspects: "(1) the 'material fact is one upon which resolution of an issue turns' and (2) 'the existence of a dispute over a material fact' is determined using a 'reasonableness standard.' "[10]

The burden is initially on the party moving for summary judgment to prove "(1) the absence of genuine fact disputes, and (2) its entitlement to judgment as a matter of law" through admissible evidence.[11] If the moving party makes its prima facie case, the burden then shifts to the nonmovant "to set forth specific facts showing that [it] could produce admissible evidence reasonably tending to dispute or contradict the movant's evidence, and thus demonstrate that a material issue of fact exists."[12] "Mere assertions of fact in pleadings and memoranda are insufficient" to rebut the moving party's prima facie case.[13] And "the offered evidence must not be too conclusory, too speculative, or too incredible to be believed, and it must directly contradict the moving party's evidence."[14]

## IV. DISCUSSION

### A. The Estate's Malpractice Claim Is Waived For Inadequate Briefing.

The estate's opening brief did not address the superior court's ruling that it cannot sue Wallace for malpractice because there is no privity of contract between

---

[9] Alaska R. Civ. P. 56(c).

[10] *Punches v. McCarrey Glen Apartments, LLC*, 480 P.3d 612, 624 (Alaska 2021) (quoting *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 519 (Alaska 2014)).

[11] *Alakayak*, 48 P.3d at 447-48.

[12] *Id.* at 448 (quoting *Philbin v. Matanuska-Susitna Borough*, 991 P.2d 1263, 1265-66 (Alaska 1999)).

[13] *French v. Jadon, Inc.*, 911 P.2d 20, 26 (Alaska 1996) (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)).

[14] *Christensen*, 335 P.3d at 516.

Wallace and the estate's beneficiaries. Wallace pointed this out in his briefing. The estate replied only that:

> The Estate did not fail to challenge [the superior court's grant of summary judgment on the malpractice claim] . . . . The Estate does contest the trial court's ruling as to Count II [malpractice] and it contests the trial court's finding by showing there were material issues of fact in dispute that precluded entry of summary judgment.

The estate then filed a notice of supplemental authority. By failing to make the argument in its opening brief, the estate has waived it, and we do not address it.[15]

> **B.     The Superior Court Did Not Err In Granting Summary Judgment To Wallace Because The Estate Failed To Present Evidence Establishing That Wallace Owed Beneficiaries Of The Estate A Legal Duty.**

A lawyer owes various duties to a client. If the lawyer breaches those duties, the lawyer may be liable to the client for resulting harm.[16] But in this case, a lawyer is being sued for harms suffered by someone who was not his client: the estate is suing Wallace, who represented the former personal representative of the estate, based on alleged harms to Hester, who was the beneficiary of the estate. For Wallace to be held liable in tort for harms to Hester, it must be shown that he owed a legal duty to her even though she was not his client.[17]

A lawyer owes a duty of care to nonclients that can be the basis for tort liability in relatively limited circumstances. In *Pederson v. Barnes* we adopted the Restatement (Third) of the Law Governing Lawyers section 51(4) as the proper

---

[15]     *See Timothy W. v. Julia M.*, 403 P.3d 1095, 1101 (Alaska 2017) (ruling that appellant's claim was waived because it was not discussed in brief).

[16]     *L.D.G., Inc. v. Robinson*, 290 P.3d 215, 221-22 (Alaska 2013) (describing elements of client's legal malpractice claim against attorney).

[17]     *Pederson v. Barnes*, 139 P.3d 552, 556 (Alaska 2006) (holding that in order to be liable for damages to ward of lawyer's client, lawyer "must have breached a legal duty that he owed" to ward).

standard to govern the potential liability of a guardian's lawyer to the guardian's ward.[18] In this case the superior court applied Restatement section 51(4) to the estate's claims. On appeal the parties dispute whether the estate has established a genuine dispute of material fact showing liability under this framework.

The estate's brief suggests that an additional standard applies. It cites our statement in *In re Estate of Brandon* that "[w]hen an attorney undertakes to perform legal services for a client who is acting in a fiduciary capacity, the attorney has a duty not to affect adversely the interests of the intended beneficiary."[19] It also cites decisions of Arizona courts that we relied on in *Brandon.* As a threshold matter we note that in *Brandon* the attorney represented both the beneficiary of the estate and the personal representative, presenting the question of whether this arrangement created an impermissible conflict of interest.[20] Therefore it is not clear whether that decision's description of the attorney's duty would apply when the attorney does not represent both parties. But in any event, the estate failed to apply this proposed standard to the facts of this case; its opening brief analyzed the evidence solely under section 51(4) of the Restatement. By failing to adequately explain how a standard for legal duty other than section 51(4) applies to the evidence in this case, the estate waived this argument.[21] We therefore focus our analysis on section 51(4).

Section 51(4) of the Restatement provides that an attorney owes a nonclient a duty of care and may be found liable for breaching that duty when and to the extent that:

---

[18]     *Id.* at 557.

[19]     902 P.2d 1299, 1316 (Alaska 1995).

[20]     *Id.* at 1315.

[21]     *See Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1259 n.86 (Alaska 2001) (argument waived for inadequate briefing).

(a)     the lawyer's client is a trustee, guardian, executor, or fiduciary acting primarily to perform similar functions for the nonclient;

(b)     the lawyer knows that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient, where (i) the breach is a crime or fraud or (ii) the lawyer has assisted or is assisting the breach;

(c)     the nonclient is not reasonably able to protect its rights; and

(d)     such a duty would not significantly impair the performance of the lawyer's obligations to the client.[22]

Because these elements are in the conjunctive, the estate must establish all of them in order to hold Wallace liable.[23]

As an initial matter, we address the estate's argument that "the question whether [a] duty was breached is generally not susceptible to summary judgment." Whether a duty was breached is not the relevant issue in this appeal. Instead we are focused on whether a duty even existed. That question is susceptible to summary judgment, even if the scope of a duty and whether the duty was breached are generally not.[24]

---

[22]     RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 51(4) (AM. L. INST. 2000).

[23]     *Bachner Co. v. State, Dep't of Admin., Div. of Gen. Servs.*, 468 P.3d 703, 708 n.13 (Alaska 2020).

[24]     *Lynden Inc. v. Walker*, 30 P.3d 609, 613 (Alaska 2001) ("While the question whether a duty exists may be susceptible to summary judgment, questions about the scope of a duty and whether the duty was breached are normally not susceptible to summary judgment, 'particularly so when the scope of the duty poses a fact-specific question . . . .' " (quoting *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 257 (Alaska 2000))).

The estate's assertion that Wallace owed estate beneficiaries a legal duty is based on five actions by Nesbitt that Wallace allegedly failed to prevent or rectify: Nesbitt's alleged failure to maintain the Five-Plex; his alleged failure to pay tax on real properties; his alleged failure to insure the Showboat property; his approval of the St. Pierre claim; and his withdrawal of funds from the estate's bank account. The superior court granted summary judgment to Wallace because it concluded that the estate's evidence did not establish a genuine dispute of material fact on subsections (b) or (c). It concluded that the evidence did not show that Wallace knew or had reason to know that he was required to act to rectify or prevent a breach of fiduciary duty by Nesbitt. It also concluded that Hester, the sole beneficiary of the estate at the time of the relevant events, was reasonably able to protect her rights. We generally agree with the superior court's conclusions.

### 1. There is no genuine dispute that Hester was reasonably able to protect her rights against most of Nesbitt's alleged misdeeds.

The evidence presented at summary judgment established as a matter of law that Hester, the only beneficiary of the estate at the time of Nesbitt's alleged failures, was "reasonably able to protect [her] rights."[25] There is no genuine dispute that she was aware of the estate administration problems for which she faults Nesbitt and Wallace, nor is there a genuine dispute that she was free from legal disability. And the probate code gave her the ability to protect her rights. For these reasons, Wallace did not owe her a duty of care.

The comments to the Restatement indicate that a person who knows about the fiduciary's failings and is not under a legal disability is reasonably able to protect the person's rights. The Restatement's example of a person unable to reasonably protect her rights is "a beneficiary unable (for reasons of youth or incapacity) to manage

---

[25] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 51(4)(c) (AM. L. INST. 2000).

. . . her own affairs."[26] By contrast, "a beneficiary of a family voting trust who is in business and has access to the relevant information has no similar need of protection by the trustee's lawyer."[27]

Hester fell into the latter camp. She sought to hold Wallace liable for Nesbitt's squandering the value of the Five-Plex, letting the insurance on the Showboat lapse before it burned down, failing to pay property taxes, and approving the assertedly fraudulent St. Pierre claim. But Hester was aware of all these problems and possessed the legal capacity to appreciate them. Hester herself raised allegations about mismanagement of the Five-Plex in 2014, well before Wallace began representing Nesbitt in October 2015. Hester was served with a petition in April 2015 stating that neither the Showboat nor the Five-Plex had liability insurance. The petition also explained that taxes were owed on at least two of the estate's real properties — the Showboat property and the Elim property. Finally, Hester was aware of the St. Pierre claim by December 2015, because the superior court had informed Wallace of its existence during a status hearing in which her counsel was present. In light of Nesbitt's alleged failures, Hester petitioned to remove him as personal representative on three separate occasions. The fact that Hester received notice of Nesbitt's missteps and took legal action to rectify them indicates that she was both aware of the fiduciary's failings and possessed the legal capacity to respond.

Moreover, the probate code gave Hester a reasonable ability to protect the estate's assets and with them her own interests. Under AS 13.16.275 Hester had the ability to petition for an order "to secure proper performance of the personal representative's duty" upon showing that the "personal representative otherwise may take some action that would jeopardize unreasonably" her interest in the estate. She

---

[26]    *Id.* § 51 cmt. h.

[27]    *Id.*

also could and did petition under AS 13.16.295 to remove Nesbitt as personal representative. The estate argues that there are clearly "questions of fact whether the beneficiary took steps to protect her interest," but the argument misconstrues the legal standard. The test does not turn on whether the beneficiary attempted to protect her rights or even was successful in doing so. It turns on whether she was "reasonably able" to protect her rights.[28] The probate code provisions give interested parties a reasonable ability to protect their rights in the estate. The estate did not present evidence that Hester, the sole beneficiary of the estate at the time of the events in question, was under a disability or otherwise incapable of protecting her rights. For that reason the superior court did not err in granting summary judgment to Wallace against liability for the alleged failings by Nesbitt described above.

> **2.  Because it is undisputed that Wallace did not know or have reason to know that Nesbitt was withdrawing funds from the estate's bank account, Wallace had no duty to prevent or rectify these withdrawals.**

A different analysis applies to Wallace's alleged liability for Nesbitt's withdrawals of funds from the estate's bank account. It is not entirely clear from the record whether Hester knew that Nesbitt was making these withdrawals in time to prevent them. But it is undisputed that Wallace did not know about the withdrawals either. Nor did he have reason to know about them. Therefore Wallace had no legal duty to prevent them.

A lawyer representing a fiduciary may have a duty to a nonclient if the lawyer "knows that appropriate action by the lawyer is necessary . . . to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient, where (i) the breach is a crime or fraud or (ii) the lawyer has assisted or is assisting the breach."[29] For purposes of this standard, "knows" means "having actual knowledge or,

---

[28]  *Id.* § 51(4)(c).

[29]  *Id.* § 51(4)(b).

alternatively, 'reason to know.' "[30]  "Reason to know" is further defined as having "information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists."[31]  In *Pederson* we observed that the Restatement "takes care to distinguish 'reason to know' from 'should know.' "[32]  "Should know" entails "a duty to inquire and determine new facts."[33]  "Reason to know" is a "less onerous standard" that involves only "drawing inferences from known facts."[34]

Even when all inferences are drawn in the estate's favor, the evidence does not show that Wallace had "reason to know" that Nesbitt was withdrawing funds from the account.  Nesbitt testified at his deposition that he was the only person with authority to withdraw funds from the estate's account.  He testified that none of the attorneys he hired while serving as personal representative had authority to deposit or withdraw money from the account.  In an affidavit Wallace attested that he advised Nesbitt not to spend any estate funds without court order or party agreement.  Wallace also attested that he did not have access to the estate's bank account and did not know that Nesbitt had withdrawn funds in 2017.

The estate's evidence does not refute these statements or otherwise create a genuine dispute about whether Wallace knew or had reason to know of the withdrawals.  In support of its assertion that Wallace had reason to know Nesbitt would

---

[30]  *Pederson v. Barnes*, 139 P.3d 552, 557-58 (Alaska 2006) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 51 cmt. h (AM. L. INST. 2000)).

[31]  *Id.* (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 51 cmt. h (AM. L. INST. 2000)).

[32]  *Id.* at 558.

[33]  *Id.*

[34]  *Id.*

drain the estate's account,[35] the estate lists certain facts about the proceedings: that the superior court had denied Hester's requests to remove Nesbitt as personal representative; that the court told Wallace that Nesbitt had accepted the St. Pierre claim; and that Wallace "could not get a full inventory and appraisement because he could not control his client." Yet none of these facts, individually or together, gave Wallace reason to know that Nesbitt would later make unauthorized withdrawals from the estate's bank account.[36]

The estate's citation to log notes of hearings in 2015 and 2016, well before the withdrawals took place in 2017, is equally unavailing. These log notes do not support any inference that Nesbitt was intending to make withdrawals from the account or that Wallace knew of that intent. The first hearing cited was in October 2015; it lasted six minutes. Neither Nesbitt nor Wallace was present, and the main topic discussed was a request that the court send notice to the parties of an Order to Show Cause hearing. At the next hearing cited, in December 2015, the parties discussed a lis pendens that had been placed on the Five-Plex, and Wallace agreed to furnish all parties with an interim accounting of the estate assets. No parties mentioned anything regarding Nesbitt withdrawing funds or spending estate money. At the third hearing cited, in January 2016, Wallace stated that he had advised Nesbitt not to spend any money from the estate's account without either a court order or agreement of all parties. Even when all inferences are drawn in the estate's favor, none of this evidence supports

---

[35]   The estate's brief contains a single section describing facts that preclude summary judgment, so it is not entirely clear whether the estate is describing these facts in support of its assertion that Hester attempted to protect her rights or in support of its assertion that Wallace had reason to know that Nesbitt would withdraw money from the estate's account. We read the estate's brief to make both points.

[36]   The estate also emphasizes that the superior court "correctly concluded that Nesbitt breached his fiduciary duty." But the court's characterization of Nesbitt's actions has little bearing on what Wallace knew or had reason to know years earlier at the time of the relevant events.

the inference that Wallace knew or had reason to know that Nesbitt would later drain the estate's bank account.[37]

The facts of this case resemble an illustration in the Restatement commentary showing when the lawyer has no duty to a nonclient.[38] In this illustration the client, a trustee, told the lawyer that he was planning to transfer trust funds into the trust account.[39] But the client actually transferred the funds into his own personal account.[40] Even though the lawyer "could have exercised diligence" and upon "further investigation" discovered that "appropriate action was necessary to prevent a breach of fiduciary duty by [c]lient," the lawyer did not have a duty of care to the beneficiary because the lawyer did not know or have reason to know of the client's intended breach.[41] According to the Restatement, Wallace was permitted to "assume in the absence of contrary information" that Nesbitt was complying with the law after Wallace

---

[37] In oral argument before the superior court, the estate conceded that it had no evidence that Wallace knew Nesbitt was taking money out of the account in 2017:

> MR. YOUNG: . . . [B]etween January of 2017 and September of 2017, I forget how many withdrawals there were but there was over $50,000 taken out of that account.
>
> THE COURT: And that was done by Mr. Nesbitt?
>
> MR. YOUNG: True.
>
> . . . .
>
> THE COURT: Do you have any evidence that Mr. Wallace knew what Mr. Nesbitt was doing?
>
> MR. YOUNG: I don't think so, Your Honor. I hope he didn't know.

[38] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 51 cmt. h, illus. 6 (AM. L. INST. 2000).

[39] Id.

[40] Id.

[41] Id.

had advised Nesbitt not to withdraw funds from the estate's account.[42]  The estate does not point to evidence showing that Wallace had "reason to know" that Nesbitt would not follow this advice.  Although the estate argues that Wallace should have asked the bank to notify him if Nesbitt made withdrawals, Wallace did not have a duty to inquire and determine new facts under the "reason to know" standard in Restatement section 51(4).[43]  For that reason, the superior court correctly concluded that the estate failed to establish that Wallace had a duty of care to beneficiaries of the estate.  Summary judgment was proper.

## V.    CONCLUSION

We AFFIRM the superior court's grant of summary judgment to Wallace.

---

[42]    *Id.* § 51 cmt. h.

[43]    *Id.*